ANNA L. MORROW

*v.*

FREDERICK R. HASSELMAN et al.

[Decided July 11th, 1905.]

. 1. Where the owner of land lays it out in streets and lots, and there is a general plan for the improvement of a street by a uniform scheme as to the building line, and covenants in relation thereto are inserted in the deeds of all purchasers, the same may be enforced by one purchaser against another without proof of special damages.

2. Immaterial violations of the restrictions, not showing an intention to abandon the plan, are no defence to such action.

3. Where the complainant gave the defendant notice as soon as it appeared that the latter's building would violate the restriction, but the building was completed after suit for an injunction was commenced, complainant is entitled to a mandatory injunction.

On amended bill, supplemental bill, replication and proofs.

*Mr. Samuel A. Patterson,* for the complainant.

*Messrs. Howe & Davis,* for the defendants.

EMERY, V. C.

The bill is filed to restrain the violation of building restrictions on property located on Allen avenue, in the borough of Allenhurst. Complainant and the defendants both hold title under conveyances from the Coast Land Company, which owned a large tract of land at Allenhurst, laid out in streets and avenues for the purpose of sale and improvement. Allenhurst is a seaside summer resort, and the land company, with a view to the general improvement of its tract for purposes of residence and of sale of its remaining lands, imposed restrictions in its conveyances, some of which related to the location of the building line, and these are the only ones now in question. The

tract held by the land company comprised several streets and avenues, and the restrictions upon the different streets and avenues varied somewhat from each other. Allen avenue, one of the principal avenues, ran to the ocean, and on this avenue the restrictions, which were in the form of covenants on the part of the grantee, provided that the grantee, his (or her) heirs or assigns,

"shall not erect or suffer to be erected upon said land a dwelling-house which shall be of less value when erected than $3,500, nor any building, piazza, porch, bay-window or obstruction to view, within forty feet of the line of said Corlies and Allen avenues, except only a fence not more than three feet high, or an ordinary open veranda or piazza or steps leading from the first floor of a porch, piazza, veranda or house to the ground."

Defendant's grantor, one Elizabeth P. Gardner, purchased two lots (Nos. 276 and 277) on the north side of Allen avenue, on April 1st, 1896, and complainant's grantor purchased two lots adjoining on the west (Nos. 278 and 279), on March 11th, 1901. Complainant received title to the lots on July 18th, 1901, and erected on one of the lots (No. 279) farthest from the ocean a dwelling-house, in which she resides throughout the year. At the time of her purchase and of the erection of her house, no dwelling had been erected on either of the defendant's lots. Defendant Hasselman purchased the lots 276 and 277 on April 1st, 1904, and erected a dwelling on No. 276 in the fall and winter following. The main foundation wall of this house is forty feet from Allen avenue, but on the first story a bay-window, which is part of a room in the house, projects two and a half feet beyond the restrictive line, and is supported by girders on the porch or piazza which extends across the whole front of the house, and is about twelve feet in width, exclusive of the steps leading up to it. On this porch or piazza, and at its edge or side nearest the street, are three pillars, one at each end and one in the centre, which support the entire upper portion of the house on that side. The second story extends over the entire piazza, and the roof of the house, which is two stories high, extends, on this side, over the piazza. These pillars are supported by brick columns or piers under the piazza. The two

front rooms on the second story occupy the whole front of the
house, and along the entire front extend about four feet beyond
the building line. Beyond this front line of these rooms there
is a structure about twenty-four feet wide, and extending six
feet to about the front line of the piazza. This structure has a
roof projecting out from the roof of the house, and includes at
each end a closet connecting with each room, about four feet by
six, between which closets is an open veranda or "loggia," also
connected by a door with each room. The closets are enclosed
and connect only with the rooms. These projections of the
second story and the closets connected with them are certainly
violations of the restrictions, as is also the bay-window on the
first story, and the questions in the case are (1) whether the
complainant, as the grantee of one lot, has a right to enforce
them against the defendant as the grantee of another, and (2)
whether, if she has such right, there are, as to her or the land
company, any equities in the case which prevent the enforce-
ment. The complainant, not being a party to the defendant's
deed, and having therefore no privity, either of legal estate
or contract, with the defendant, her right to enforce the cove-
nant is equitable only, and depends upon the existence of a
general plan for the improvement of this avenue by a uniform
scheme, and the insertion of covenants in the deeds of pur-
chasers, which were intended for the benefit of each purchaser
on the avenue, and to which each purchaser with notice was
subject. *DeGray* v. *Monmouth Beach Club, 50 N. J. Eq. (5
Dick.) 329 (Vice-Chancellor Green, 1892)*; *Hayes* v. *Waverly
and Passaic Railroad Co., 51 N. J. Eq. (6 Dick.) 345 (Chan-
cellor McGill, 1893)*; *Trout* v. *Lucas, 54 N. J. Eq. (9 Dick.)
361 (Vice-Chancellor Emery, 1896)*. As was said by Chief-
Justice Depue, in *Walker* v. *Renner, 60 N. J. Eq. (15 Dick.)
493, 498 (Court of Errors and Appeals, 1900)*, "restrictions
of this character (erection of buildings) are valid and are
regarded as for the benefit of the owners of the tract to be im-
proved and made profitable by the sale of lots, and also for the
advantage of persons who have become purchasers on the faith
of the scheme of improvement adopted."

The evidence shows the adoption of such general plan of im-

provement in this case, and that all of the lands conveyed by the land company, or by the Coast Land Improvement Company, its successors in title, on Allen avenue (with one exception), have been conveyed with a restriction as to the building line of not less than forty feet. On the second block east of the block now in question, lots Nos. 82 and 83 were conveyed by the land company with a twenty-five feet restriction instead of forty feet, but this was because lot No. 81, next adjoining these on the east, was never owned by the land company, and upon this latter lot a house had already been built by a prior owner up to the twenty-five-feet line. This exception as to Nos. 82 and 83 cannot be considered a change of the general plan of the company. And, although different building lines were adopted for different avenues, the line adopted for each street is the general plan or scheme for that street upon which purchasers upon the street or avenue have a right to rely. Defendant Hasselman's own deed did not in terms set out the restrictions, but declared expressly that it was subject to the same restrictions imposed in the deed from the complainant to Mrs. Gardner, in which deed the covenants were fully set out. The defendant therefore, as settled in *Hayes* v. *Waverly and Passaic Railroad Co., supra,* must be held chargeable with notice, even if his statement be true that the abstract of title, upon the faith of which he bought, did not disclose the restrictions, and that he had no actual knowledge of the restriction until it was called to his attention by the complainant, or on her behalf, soon after he began the erection of his house. The complainant purchased her lot, relying on the general plan as to the building line of Allen avenue, erected her own building on the line, in compliance with it, and notified defendant Hasselman to observe the restrictions as soon as her attention was called to their violation. Proof of special damage is not essential for the enforcement of covenants in such cases—*Kirkpatrick* v. *Peshine, 20 N. J. Eq. (5 C. E. Gr.) 206 (Chancellor Zabriskie, 1872)*; *Cornish* v. *Wiessman, 35 Atl. Rep. 408 (Vice-Chancellor Emery, 1896)*—but substantial, or at least appreciable, damage is shown in this case, for complainant's view to the east is specially affected by

these violations, and she has a special interest and right in preventing the obstruction to her view. The case, therefore, is one where she is equitably entitled to enforce the restrictions, unless the further objections set up by defendants are valid. It is insisted, in the first place, that the covenant should not be enforced because of the previous violations of these building restrictions, which have been allowed on Allen avenue and on the other avenues and streets. As to alleged violations on other streets and avenues, my view is that, even if proved, they are not material in this case, as the restrictions on each avenue, in a general plan of this kind, must be considered as adopted with special reference to each avenue and its improvement, and the rights of purchasers on one avenue, who have in good faith bought and built according to its restrictions, are not impaired or affected by acts of the vendor or other purchasers relating to the then existing restrictions on other avenues. As to the alleged violations of the restrictions on Allen avenue, they must be material and such as to prevent the general plan relating to that avenue from being carried out. The materiality of the violations is to be determined by the circumstances of each case, and the question seems to be whether they are such as to indicate an abandonment of the original general plan and make its enforcement inequitable because of the changed condition of the property under restriction. *Jackson* v. *Stevenson, 156 Mass. 496 (1891)*; *Trustees of Columbia College* v. *Thacher, 87 N. Y. 311 (1882)*; *Amerman* v. *Deane, 132 N. Y. 355 (1892)*; *German* v. *Chapman, L. R. 7 Ch. Div. 271 (1877)*. These are cases where the use of the property was restricted. Where the restriction relates to the character or location of the building itself, the passive acquiescence of a purchaser in breaches of the covenant, by which he sustains no particular injury, has been held not to deprive him of his equity to protection, where the breach immediately affects his enjoyment of his own house. *Western* v. *McDermott, L. R. 2 Ch. App. 75 (1867)*; *Payson* v. *Burnham, 141 Mass. 547 (1886)*. In the latter case the erection of a bay-window next plaintiff's house, in violation of a covenant, was enjoined, and it was held that the

fact that owners of other houses had similar bays was immaterial, where they did not interfere with plaintiff's prospect or the use of his house. The violations set up by defendant are principally encroachments, or alleged encroachments, upon the building line, by the piazzas on the second story of some of the houses on Allen avenue, and the projection of the gables of the houses over the line. In some of the houses there are round towers, bays or projections on the second story, two or three feet beyond the line. None of these violations are of such a character as to indicate an abandonment of the building line or the restrictions by the land company, even if it be assumed that a second story piazza is within the covenant. And, as against the present complainant, they have no force as indicating a waiver or abandonment on her part of the entire benefit of the covenants, when necessary to protect her own house. The houses in question were not in complainant's immediate neighborhood; they did not interfere at all with her prospect or her enjoyment of the benefit of the general plan, and the projection of any of these second story piazzas and bays beyond the line could probably not have been ascertained without a measurement. Complainant, until the filing of the answer, did not know of any encroachments on the building line. She knew of the second story piazzas of the houses, but these structures do not seem to have been considered either by the land company or by any of the builders as within the restrictions, and I am inclined to think that they are not. But even if they were erected under an erroneous construction of the covenant as to piazzas, this would be no ground for considering the covenant relating to the building line of the houses as not in force, or the general scheme of the building line as wholly abandoned, although it might be ground for refusing to enforce the covenant against this practical construction put on it by all parties. I considered this question in *Righter* v. *Winters, 68 N. J. Eq. 252 (1905)*, where I refused an injunction for this reason, and if defendant here had erected only a second story piazza, instead of extending the second story of the house over the line, its removal would not have been enforced by injunction. But none of these viola-

tions reach to the point now insisted on by defendant, viz., the right to extend what is practically the second story of the house itself beyond the building line and to the front line of the piazza. This objection, therefore, cannot prevail. The next objection, and the one principally relied on, is that complainant has herself violated the restrictions, and is therefore not equitably entitled to an injunction. The alleged violation consists in the structure of the second story piazza on her own house. This is at the centre of the second story, extends in front to near the edge of the roof of the first story piazza, and is about twelve feet in width. It is built as an open piazza, with slender columns at the front corners, but for a space of about three feet from the bottom is enclosed. During the last winter season the complainant enclosed the open space above with glass sashes, which are removable. This piazza has a roof, upon which the dormer windows in the third story open or look out. This piazza, so far as its structure goes, may fairly be considered "an ordinary open veranda or piazza" within the restriction, and if a second story piazza is allowed under the covenant, as I think it is, there is no violation at all of the covenant. But, in my view of the covenant, the violation is so slight and immaterial, for present purposes, as to be no bar to relief.

One other point remains to be noticed. The Coast Land Company, by deed dated October 1st, 1898, conveyed to the Coast Land Improvement Company portions of the lands in the original tract still owned by it, but the deed did not include either complainant's or defendant's land. This deed described the lots, but in the clause containing the restrictions, which was a single clause applicable to all the property, blank spaces were left for the distances fixed as the building line of the several streets. It is claimed that this conveyance had the effect of removing the restrictions from all the lands conveyed to the Improvement Company, and destroyed entirely the general plan, so far at least as it affected subsequent grantees. The effect of the deed was to substitute the Improvement Company for the Coast Land Company as owners of the lands conveyed, which comprised most of the lands owned, and the intention was to con-

tinue the sale and improvement of the lands under the previous general plan adopted by the original vendors. The Improvement Company have since continued to carry out the original plan, and its conveyances to purchasers of lands on Allen avenue are made with restrictions as to the building line of not less than forty feet. The equitable rights of complainant and other purchasers from the Coast Land Company to enforce the covenants relating to Allen avenue against purchasers from that company, have not been affected or impaired by this conveyance, either as an abandonment of the plan or otherwise. Complainant in this case promptly notified the defendant Hasselman of the infringement of the covenant, and of her intention to compel the observance of it by suit, if necessary. This notice was given as soon as it was apparent that the second story of his house would project beyond the line. Notwithstanding the notice, Hasselman proceeded with the erection, and it was completed after the suit was commenced. The excavation for the foundation walls of his house was begun about November 25th, 1903, and was entirely within the line. On December 5th, Hasselman began the erection of the frame of the house. Complainant discovered, about December 10th, that the building would project beyond the line, and on the 11th of December gave the notice in writing. The bill was filed on December 26th, 1903, and the building completed after the suit. The allegations in the bill being defective, it was amended after demurrer, and the amended bill was filed June 4th, 1904. The completion of the building under these circumstances must be considered to have been at the defendant's risk, and complainant is entitled to a mandatory injunction to enforce the covenant. Pending the suit, and after the completion of the building, the defendant Hasselman conveyed the premises to the defendants Bowers and Fairchild, subject to the restrictions in the Gardner deed, and a supplemental bill was filed making them also defendants. They have answered the bill, and subsequently reconveyed the premises to the defendant Hasselman. He afterwards made still another conveyance of the premises (with warranty) to a Mr. Moore, who was the owner of the legal title at the time of the

hearing (January, 1905). Moore had knowledge of the suit but does not personally defend it, and Hasselman undertook to defend the suit for him. Complainant is entitled to a decree enforcing the injunction against all of the defendants, and on the settlement of the decree I will hear counsel as to the right to a decree in such form as to enforce it against Moore, without a supplemental bill to carry it into effect.