WARD and wife, Respondents, vs. PROSPECT MANOR COR-
PORATION and another, Appellants.

*November 18, 1925—January 12, 1926.*

*Covenants: Building restrictions: General scheme of proprietor:
Acquiescence in violations of restriction: By proprietor: By
one lotowner: Effect: Waiver: What constitutes dwelling
house: Duplex buildings: Flat buildings: Enforcement of re-
strictions: Under changed conditions: Injunction: Form of
decree.*

1. A covenant restricting premises to single-family dwellings,
inserted by a former common grantor in the conveyance of
lands, inures to the benefit of all purchasers where it was
inserted to carry out a general plan of development, and con-
stitutes at least an equitable servitude on the land, enforceable
in equity in the absence of circumstances making its enforce-
ment unjust.    p. 537.

2. Acquiescence by the proprietor of a restricted district in the
violation of any covenant in any part of the entire tract may
be sufficient to deny to him the equitable right to enforce the
covenants, whereas a violation at a point on the tract distant
from the lot of an individual lotowner cannot appropriately
call for affirmative action by such an owner to retain his
right to enforce them; and an individual lotowner is not under
penalty of waiving his right to enforce a restrictive covenant
by his failure to take notice of such violations as do not
affect him.    pp. 539, 540.

3. The term "private residence or dwelling house," used in a
restrictive covenant, means a dwelling house for a single
family, so that as a matter of law a duplex building is in vio-
lation of such covenant.    p. 541.

4. Acquiescence in a slight violation of a restrictive covenant does
not deprive an individual lotowner of his right to enforce
observance of more material restrictions.    p. 542.

5. So, also, the acquiescence by a lotowner in remodeling a house
adjoining his on the south into a duplex building is not such
a material infringement of his rights under a covenant re-
stricting the district to single-family dwellings as to deprive
him of the right to enforce a covenant against the erection
of a four-flat building on property adjoining him on the
north.    p. 542.

6. The erection of fifteen duplex buildings, which resembled out-
wardly single-family residences, in a district containing ninety-
two lots restricted to single-family dwellings, does not indi-

cate an intention by the residents of the district to abandon the original plan or scheme of the proprietor.   p. 545.

7. Equity will not enforce restrictive covenants where the character of the neighborhood has so changed as to make it impossible to accomplish the purpose intended by such covenants. p. 544.

8. A change of conditions in a restricted district may result from the natural growth of a city, bringing industry, traffic, etc., into close proximity to the restricted area, or from a failure by the property owners to observe the covenants, which violations may be so general as to indicate a purpose to abandon the general scheme.   p. 544.

9. Newly-discovered evidence that a five-family house was located in one of the subdivisions of the restricted area, and that numerous garages were being rented in violation of the covenants, would not warrant a change in a decree granting a permanent injunction against the erection of a four-flat building next to plaintiffs' house, and a motion for a new trial was properly denied.   p. 545.

10. A decree or judgment disposes of the rights of the parties as they presently exist and as they appear from the evidence in the case; and a judgment in this case decreeing a perpetual injunction, without providing for modifications in case of changed conditions, is proper.   p. 546.

APPEAL from a judgment of the circuit court for Milwaukee county: A. H. REID, Judge.   *Affirmed.*

Action in equity to enforce a restrictive covenant.   It appears that on July 31, 1894, one Edmund A. Cummings was the owner of a considerable tract of land in the Eighteenth ward of the city of Milwaukee.   On or about said date he divided said land into twelve large blocks, but did not subdivide the blocks into lots.   Later blocks 1 to 8, inclusive, were re-subdivided into lots, conveyed by Cummings to the Cummings Boulevard Land Company, and by that company the lots of such re-subdivision were placed on the market for sale as the Newberry Boulevard Addition.   Such addition was four blocks east and west and two blocks north and south.   Newberry boulevard ran east and west through the addition, leaving four blocks north of said boulevard and four blocks south thereof.   Newberry boulevard is 150

feet in width.  All of these lots were conveyed by deeds containing restrictive covenants, the portion of such covenant as is material here reading as follows:

"The grantees, their heirs and assigns, shall not at any time hereafter erect or cause, or procure, permit, or suffer to be erected upon the hereby granted premises or any part thereof, any apartment or flat or tenement building designed for or adapted to the occupancy of more than one family, or any building or buildings to be used or occupied for any other purpose than a private residence or dwelling house."

Plaintiffs own, subject to such restriction, lot 3 in block 6 in such re-subdivision.  The defendants own lots 1 and 2 in such subdivision.  The defendants' premises are in the northeast corner of the block, and corner Prospect and Folsom place.  Folsom place is the northern boundary of that part of the re-subdivision so placed on the market by said Cummings Boulevard Land Company.  Plaintiffs have owned their property since 1912.  The defendants acquired title to their property October 14, 1924.  Plaintiffs' lot is 40 feet in width, running from the street to the alley, a distance of 121 60-100 feet.  Lot 2 of defendants' property is 40 feet in width, and lot 1 is 26 81-100 feet in width, being of the same depth as plaintiffs' property.  Shortly after the acquiring of this property by defendants they commenced the erection of a four-flat, two-story brick veneered apartment house.  Plaintiffs immediately called the defendants' attention to the restrictive covenants above mentioned and notified them not to erect any building contrary to said covenant, and that in the event of their disregarding such covenant plaintiffs would commence injunction proceedings to prevent such erection, and, if the erection proceeded, to compel the removal of any building erected contrary to said covenant affecting both plaintiffs' and defendants' premises.  This notice was served as soon as excavation for the four-flat building was commenced, and this action was instituted immediately thereafter.  The defendants dis-

regarded said notice and proceeded with the erection of the building after the commencement of this action.

As conclusions of law the court found that the plaintiffs are entitled to a permanent perpetual injunction enjoining the defendants from continuing with the construction of said building, or from using and occupying the same for any purpose other than a private residence or dwelling, and that the plaintiffs were entitled to a mandatory injunction requiring the defendants to conform their said building to the restrictive covenant above mentioned, or that said defendants remove the said building altogether within three months from the date of entry of judgment. From a judgment entered in accordance with such conclusions of law the defendants bring this appeal.

For the appellants there was a brief by *Frank H. Hannaford* and *Harvey C. Hartwig*, attorneys, and *Schmitz, Wild & Gross*, of counsel, all of Milwaukee, and oral argument by *Mr. Hannaford, Mr. Hartwig,* and *Mr. Robert Wild.*

For the respondents there was a brief by *Lenicheck, Boesel & Wickhem* of Milwaukee, and oral argument by *F. J. Lenicheck.*

OWEN, J. Neither the validity nor the binding effect of the restrictive covenant is challenged by the appellants. It is well established that such covenant, inserted by the proprietor in a conveyance of his lands, inures to the benefit of all the purchasers where it is inserted for the purpose of carrying out a general plan or scheme of development, and that it constitutes at least an equitable servitude upon the land, and constitutes a valuable property right which a court of equity will enforce in the absence of facts and circumstances making such enforcement unjust or inequitable. *Boyden v. Roberts,* 131 Wis. 659, 111 N. W. 701. Actions of this nature have frequently come before the courts, and one of the defenses almost invariably to be met in such actions is that the plaintiff, by acquiescence in certain other

violations of the covenant, has waived the benefits thereof, and should be denied the relief of a court of equity.

It was early held in England that where a landlord had permitted a single violation of a restrictive covenant by one of his tenants, he thereby waived the right to have such covenant enforced against any of his tenants who were similarly obligated. *Roper v. Williams,* 1 Turn. & Russ. 18. As it is usually possible to ferret out some violations of restrictive covenants such as this in any plat or town site where the proprietor has exacted such covenants for the benefit of all in establishing a general plan or scheme for the development, maintenance, or preservation of the neighborhood, the defense of waiver by acquiescence, encouraged by the ruling in *Roper v. Williams,* has persisted from that day down to this. The holding in *Roper v. Williams* was very sweeping, and it will be noted that by that ruling the slightest acquiescence in a violation of a restrictive covenant, especially on the part of the proprietor, worked a destruction of the entire scheme. This doctrine, however, was quickly limited, if not repudiated, by the English courts, and in *German v. Chapman,* L. R. 7 Ch. Div. 271, Lord Justice JAMES, referring to the doctrine of *Roper v. Williams,* said:

"It would be a monstrous thing if it were the rule of this court that upon such an estate as the Westminster estate in London every one of the houses in Belgrave Square and Eaton Square is freed from any restrictive covenant of this kind because in some remote alley or back street upon the same estate somebody or other has been permitted to do something which is prohibited by his covenants."

The Lord Justice then proceeded to say that the true rule was stated in *Peek v. Matthews,* L. R. 3 Eq. 515, 517, which he interpreted to be that "if there is a general scheme for the benefit of a great number of persons, and then, either by permission or acquiescence, or by a long chain of things,

the property has been either entirely or so substantially changed as that the whole character of the place or neighborhood has been altered so that the whole object for which the covenant was originally entered into must be considered to be at an end, then the covenantee is not allowed to come into court for the purpose merely of harassing and annoying some particular man where the court could see he was not doing it *bona fide* for the purpose of effecting the object for which the covenant was originally entered into." He then further says:

"I think it would be a monstrous thing to say that nobody could do an act of kindness, or that any vendor of an estate who had taken covenants of this kind from several persons could not do an act of kindness, or from any motive whatever relax in any single instance any of these covenants without destroying the whole effect of the stipulations which other people had entered into with him. For instance, in this very case application was made to the plaintiff for a waiver. It would be monstrous to suppose, if he had acceded to that application, that therefore he was, by the mere act of kindness to the defendants themselves, destroying the whole benefit of the covenants as to all the rest of the estate."

Modern authority has made a distinction between the rights of a proprietor in such respect and the rights of an individual lotowner, such distinction arising from the fact that the proprietor is or may be directly interested in violations of such covenants upon any part of the entire tract, and acquiescence on his part may appropriately deny to him the equitable right to enforce the covenants; but a violation of a restrictive covenant at a point on a tract distant from the lot of an individual lotowner may be of no interest whatever to such an owner and cannot appropriately call for affirmative action on his part. *Bowen v. Smith,* 76 N. J. Eq. 456, 74 Atl. 675; *Brigham v. H. G. Mulock Co.* 74 N. J. Eq. 287, 70 Atl. 185.

It is now generally recognized by the overwhelming weight of authority in this country that an individual lot-owner is not under penalty of waiving his right to the enforcement of a restrictive covenant by his failure to take notice of such violations as do not affect him. Thus in *Brigham v. H. G. Mulock Co.* 74 N. J. Eq. 287, 289, 70 Atl. 185, it is said "that any claim of bar asserted against the rights of an owner of a single lot by reason of acquiescence in the violation of restrictive covenants of this nature must be measured by the relation of the asserted violation to the individual lot." In *De Lima v. Mitchell,* 49 Misc. 171, 98 N. Y. Supp. 811, 813, the court says:

"In order to have the benefit of restrictive covenants, it is not necessary that the plaintiff should take notice of every violation thereof. He may take no notice of violations not especially offensive to him without losing his right to enforce the restrictions in the case of especially offensive violations."

In *Schadt v. Brill,* 173 Mich. 647, 139 N. W. 878, the court, after a very complete review of the authorities, said:

"We find the law well settled to the effect that a person owning property in restricted territory does not waive or lose his right to enforce the restrictions where their violation becomes especially and personally offensive and injurious to him and his property by reason of his previous omission to take notice of violations, and insist on observance of the covenants, in cases not affecting him or his interests, or the locality in which his property is situated."

The following are a few of the numerous authorities supporting this doctrine: *Morrow v. Hasselman,* 69 N. J. Eq. 612, 61 Atl. 369; *Payson v. Burnham,* 141 Mass. 547, 6 N. E. 708; *Bacon v. Sandberg,* 179 Mass. 396, 60 N. E. 936; *Meaney v. Stork,* 80 N. J. Eq. 60, 83 Atl. 492; *Yeomans v. Herrick,* 178 Mo. App. 274, 165 S. W. 1112; *Seawright v. Blount,* 139 Ga. 323, 77 S. E. 152; *Brown v. Huber,* 80 Ohio St. 183, 88 N. E. 322, 28 L. R. A. n. s. 705.

The facts and circumstances which appellants insist constitute a waiver on the part of the plaintiffs of their right to have the covenant under consideration enforced are these: The erection of a number of duplex residences intended for occupation by two families has been permitted in the addition. Fifteen such buildings have been permitted in the four blocks or upon the ninety-two lots north of Newberry boulevard. This is the portion of the addition in which the premises of plaintiffs and defendants are located. The trial court found that these so-called duplex buildings are so like single-family residences as hardly to be distinguishable without interior inspection. These duplex buildings are all located at some distance from plaintiffs' property and on streets other than that on which plaintiffs' property is located, except where the owner of the property adjoining that of plaintiffs on the south originally built a single-family residence, but subsequently made interior alterations in the house and converted it into a duplex building. There were no exterior alterations of any consequence, and the general appearance of the house was in no manner changed. Another duplex building had been built diagonally across the street from plaintiffs' premises on the southeast corner of Prospect avenue and Folsom place.

It is conceded that the term "private residence or dwelling house," used in this covenant, means a dwelling house for a single family. The authorities so hold. *Taylor v. Lambert,* 279 Pa. St. 514, 124 Atl. 169; *Gannett v. Albree,* 103 Mass. 372; *Koch v. Gorruflo,* 77 N. J. Eq. 172, 75 Atl. 767. As a matter of law, therefore, these duplex buildings are in violation of the restrictive covenant under consideration. However, plaintiffs were not at all concerned with any of these violations so far as their own property was affected, unless it be the violation on the premises immediately adjoining their property on the south or the one diagonally across the street. The violation on adjoining property was

the one which no doubt more intimately affected their property than any other, but it is to be remembered that the exterior appearance of that building was in no manner changed. The æsthetic features of the building remained the same. So far as their outlook or the general appearance of their surroundings is concerned, plaintiffs' interests were in no wise affected.

Appellants strenuously urge that the purpose of this covenant was to promote privacy. That probably was one purpose. Another purpose, and perhaps of greater consideration, was the general surroundings and appearance of the neighborhood. The change made on the property immediately south of plaintiffs' property was to increase the number of families in the neighborhood by one. The plaintiffs might well have considered this an immaterial infringement upon the covenant and one which they would endure rather than incur litigation with their neighbors. It is well established that acquiescence in slight violations of a covenant does not deprive an individual lotowner of the right to enforce observance of more material restrictions. *Morrow v. Hasselman,* 69 N. J. Eq. 612, 61 Atl. 369; *Payson v. Burnham,* 141 Mass. 547, 6 N. E. 708; Berry, Restrictions, §§ 381, 382; *Tripp v. O'Brien,* 57 Ill. App. 407. We do not think that plaintiffs' acquiescence in the remodeling of the house adjoining them on the south deprived them of the right of enforcing the covenant against the building of a four-flat building by the defendants on the property adjoining them on the north. Under the circumstances, the violation by their neighbors on the south cannot be said to be a very material infringement upon their rights. It would be a harsh rule to say that by permitting the remodeling of this house the plaintiffs lost the right to prevent the erection of any kind of a building, whether it be a garage, livery stable, or other obnoxious building, on the premises adjoining them on the north. What considerations of

equity prevent the plaintiffs from waiving a slight infringement of the covenant by one neighbor without compelling them to endure most obnoxious violations thereof on the part of another? The right secured to them by the covenant under consideration was a property right. If they are under no obligations to protect the general plan or scheme by protesting violations which do not immediately affect their property, then they are under no obligations, for the purpose of protecting the general plan or scheme, to protect violations which do immediately affect their property. In other words, if any duty rests upon an individual lotowner to protect the general plan or scheme of development for the benefit of all, the proximity of the violation to their property cannot be material. If this be a property right, why may not the individual lotowner do with it as he will? Certainly he could give one neighbor a driveway over his property without incurring obligations to give another neighbor a similar driveway. Why then should he be obliged to permit one neighbor to indulge in an obnoxious violation of a restrictive covenant because he has permitted another neighbor to indulge in an immaterial violation thereof? The supreme court of Massachusetts makes the square declaration "that a plaintiff is not prevented from obtaining relief by the fact that he has not objected to a violation of a restriction by some one in the neighborhood other than the defendant." *Bacon v. Sandberg,* 179 Mass. 396, 60 N. E. 936. While the necessities of this case do not require us to take such broad ground, we query whether the logic of the situation does not lead to that result.

We hold that the plaintiffs were not required to take any notice of the duplex building erected across the street. If they were obliged to take any notice of the remodeling of the building adjoining them on the south, such remodeling constituted but a trivial violation of the covenant which they were not obliged to challenge by court proceedings without

becoming divested of all other benefits accruing to them by
reason of the covenant.

We must now consider the further contention usually
made in such class of cases, and that is that there has been
an abandonment of the original scheme or plan of pre-
serving the addition as a strictly residential neighborhood
by reason of the presence of the fifteen duplex buildings
already mentioned.   Courts of equity will not enforce such
restrictive covenants where the character of the neighbor-
hood has so changed as to make it impossible to accomplish
the purposes intended by such covenants.   This may result
from circumstances over which neither plaintiff, nor defend-
ant, nor other residents of the community has any control,
as in *Rowland v. Miller,* 139 N. Y. 93, 34 N. E. 765, where
the erection of a steam railway and the construction of a
station rendered the neighborhood, and especially defend-
ant's property in front of which the station was erected,
unfit for use for residential purposes to which it was in-
tended to confine the restricted area.   Such changed condi-
tions may result from the natural growth of the city, bring-
ing industry, smoke, soot, and traffic into such close prox-
imity to the restricted area as to render it undesirable for
the purposes to which it is restricted.   Such changed condi-
tion may also result from a failure on the part of the prop-
erty owners to observe or comply with the terms of the
covenant.   These violations may be so general as to indicate
a purpose and intention on the part of the residents of the
community to abandon the general scheme or purpose.   Un-
der such conditions, courts of equity will not enforce the
covenant.   *Rowland v. Miller,* 139 N. Y. 93, 34 N. E. 765;
*Trustees of Columbia College v. Thacher,* 87 N. Y. 311;
*Ewertsen v. Gerstenberg,* 186 Ill. 344, 57 N. E. 1051;
*Amerman v. Deane,* 132 N. Y. 355, 30 N. E. 741; *Jackson
v. Stevenson,* 156 Mass. 496, 31 N. E. 691.

In this case there is no claim that business, commerce, or
industry has intruded into the restricted territory.   It is

contended that the erection and maintenance of the duplex houses above mentioned indicates an intention to abandon the restricted area as a single-dwelling residential district. As already stated, there are ninety-two lots in that portion of the plat which the lower court thought was material to consider. There are fifteen duplex buildings erected within this territory. Upon all other lots except two, a residence in compliance with the terms of the covenant is maintained. The sufferance of these duplex houses does not reasonably indicate any intention or purpose on the part of those residing in the district to abandon the plan or scheme intended to be maintained by force of the restrictive covenant we are considering. If it indicates anything, it rather indicates that the residents of that community did not consider these duplex residences as a violation of the covenant. As found by the trial court, they resembled in outside appearance a very substantial, single-family dwelling. But however that may be, it certainly does not indicate an intention on the part of the residents of this portion of the plat to abandon the original plan or scheme of the proprietors. *Killian v. Goodman,* 229 Mich. 393, 201 N. W. 454; *Rosenzweig v. Rose,* 201 Mich. 681, 167 N. W. 1008.

Appellants complain because the lower court refused to grant their motion for a new trial. This was based on the discovery of new evidence, chief of which was the location of the five-family house in the re-subdivision of blocks 5, 6, 7, and 8, and that numerous garages were being rented, but not occupied for private purposes only, as provided in the covenant. It is apparent that proof such as this would not compel a different conclusion.

The appellants object to the form of the judgment decreeing a perpetual injunction without provision for modification, and say that the proper form of judgment is one that permits modification as conditions in the neighborhood change. The present decree acts only upon existing facts, and is based upon the conditions presently existing in the

neighborhood.   If and when conditions change, the court will have power to deal with such changed conditions without any embarrassment by reason of this decree.   This decree declares the rights of the parties as they exist by reason of the present situation.   It cannot affect a changed situation which may arise in the future.   We do not think it necessary that the decree specifically authorize modifications as conditions in the neighborhood change.   A decree or judgment disposes of the rights of the parties as they presently exist and as they appear from the evidence in the case.

We see no grounds for reversal, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.