**MAYS v. BURGESS et al.**

No. 9119.

United States Court of Appeals
District of Columbia.

Argued Oct. 23, 1945.

Decided Oct. 31, 1945.

EDGERTON, Associate Justice, dissenting.

———◆———

Messrs. James A. Cobb and William H. Hastie, both of Washington, D. C., with whom Messrs. George E. C. Hayes and Leon A. Ransom, both of Washington, D. C., were on the brief, for appellant.

Mr. Henry Gilligan, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

GRONER, C. J.

This is a second appeal in this case. When it was here before we affirmed, with costs, and by our mandate ordered the District Court to carry its judgment into effect.

The case concerned the validity of a "restrictive covenant" running with the land. The District Court on the original trial held the covenant in full force and effect and directed defendant Mays, whose purchase violated the covenant, to remove herself and all of her personal effects from the premises within sixty days from the date of judgment (June 30, 1944).

On the original appeal here it was argued that the judgment should be reversed —"(1) because the character of the neighborhood has so changed as to render the original purpose unenforceable; (2) that the covenant constitutes an undue and unlawful restraint on alienation; (3) that it is not binding on the appellants, who are the successors in interest of the original covenantors, because of lack of privity; and (4) it is contrary to public policy and violates the Constitution of the United States, particularly the Fifth and Fourteenth Amendments and Section 1 of the Thirteenth Amendment and the statutes enacted thereunder, particularly R.S.1977, 1978 and 5508 [8 U.S.C.A. §§ 41, 42; 18 U.S.C.A. § 51]."

We held, for reasons stated in the opinion, that there was no merit in any of the contentions, and specifically that appellant had purchased with both actual and constructive notice of the terms of the covenant. 79 U.S.App.D.C. 343, 147 F.2d 869. Thereafter application was made to the Supreme Court for certiorari and denied June 18, 1945, 65 S.Ct. 1406.

Appellant, however, refused and neglected to comply with the judgment of the District Court, and accordingly, September 3, 1945, a motion was filed by appellees to have appellant adjudged in contempt. The motion came on for hearing September 27, 1945, and appellant filed in opposition thereto an affidavit made by herself and one made by a District of Columbia real estate agent. The purport of the two affidavits was (1) that appellant had made diligent effort to obtain another home in

which to live, without success, and (2) that since the original judgment in this case four colored families had purchased property in the adjoining block (the restrictive covenants on the land in that block having expired subsequent to the date of the original judgment). The District Court, September 27, 1945, entered an order in contempt to be enforced, unless appellant removed from the premises on or before October 10, 1945. We extended the period to November 1, 1945.

Appellant thereupon took an appeal to this court.

■ Enough has been said to show that the judgment of the District Court, affirmed by this court, established the law of the case. Thereafter the District Court had no jurisdiction, except to carry out the mandate of this court. No principle of law is better established than the rule that a District Court is bound "by the decree as the law of the case, and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution * * *." Sibbald v. United States, 12 Pet. 488, 492, 9 L. Ed. 1167; Ex parte Union Steamboat Co., 178 U.S. 317, 319, 20 S.Ct. 904, 44 L.Ed. 1084. The rule has been reiterated by the Supreme Court time and again, as will readily be seen by an examination of the following cases: Kansas City So. R. Co. v. Guardian Trust Co., 281 U.S. 1-11, 50 S.Ct. 194, 74 L.Ed. 659; Ex parte Union Steamboat Co., 178 U.S. 317, 20 S.Ct. 904, 44 L. Ed. 1084; In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414; Gaines v. Caldwell, 148 U.S. 228, 13 S.Ct. 611, 37 L.Ed. 432; Ex parte Washington & Georgetown R. Co., 140 U.S. 91, 11 S.Ct. 673, 35 L.Ed. 339. In Skillern's Ex'rs v. May's Ex'rs, 6 Cranch 267, 3 L.Ed. 220, the Supreme Court, on certification of the question whether the court below, upon discovery of the fact that it had had no original jurisdiction in the case, could dismiss the proceedings, answered that as the merits of the case had been finally decided and its mandate required only the execution of the decree, the Circuit Court was bound to carry that decree to execution, although the jurisdiction of that Court was not alleged in the proceeding. See also Washington Bridge Co. v. Stewart, 3 How. 413, 11 L.Ed. 658. In Ex parte Dubuque & Pacific R. Co., 1 Wall. 69, 17 L.Ed. 514, a case in which the Supreme Court had reversed the judgment of the Circuit Court and remanded the cause to enter judgment for the other party, and the court below had thereafter received affidavits showing new facts and demanding a new trial, it (the Supreme Court) ordered the proceedings vacated on the ground that the court had no power to set aside the judgment, "its authority extending only to executing the mandate." To the same effect is In re Potts, 166 U.S. 263, 17 S.Ct. 520, 521, 41 L.Ed. 994. There a bill in equity for infringement of letters patent was denied in the lower court. On appeal the Supreme Court decided that the patent was valid and had been infringed, and the case was remanded. The lower court entered a decree in conformity with that mandate and awarded a perpetual injunction against defendant infringers. Defendant infringers then filed a petition for a rehearing on the basis of newly discovered evidence and, after rehearing, the court entered a decree that the letters patent were void.

The Supreme Court, citing In re Sanford Fork & Tool Co., supra, pointed out that the instant case, unlike the Sanford case, had been heard not merely upon a question of sufficiency of pleading but upon the whole merits, and, accordingly, the validity of the patent must be considered as finally settled and not open to reconsideration by the lower court. A rule to prevent such further proceedings was held to be "essential to the proper administration of the law, and to a reasonable termination of litigation between the parties in chancery suits."

Many other cases of a like nature and with a similar result might be cited.

■ When this case was here before it was argued at great length that the character of the neighborhood had changed since the making and recording of the covenants, and the points of hardship and lack of reasonable housing accommodations in the District of Columbia, now reiterated, were stressed and urged. We considered both points and held that they were not sufficient to justify the abrogation of the rule of law which this court had applied consistently in similar cases over a period of twenty-five years. The fact that since the case was originally heard below, a similar covenant, covering property in an adjoining block, has expired by time limitation and four purchases by colored people have been made, would not, even if it had occurred before decision, have changed the result. As we said in our former opinion, the neighborhood, consisting

of approximately one thousand homes, churches and business properties, was exclusively occupied by persons of the white race, under similar restrictive agreements or deed covenants. The infiltration of four colored families would not have required our applying the rule we did in Hundley v. Gorewitz, 77 U.S.App.D.C. 48, 132 F.2d 23, where we held the restrictive condition had failed by reason of the change in the neighborhood, so that its enforcement would impose a hardship rather than an advantage to those who complied with its terms.

The case having been originally heard in the District Court upon the whole merits, and the judgment of that court affirmed by this court, the case must be deemed to be finally settled. The appeal is without merit and accordingly the judgment below is affirmed and the appeal dismissed, with costs.

Affirmed.

EDGERTON, Associate Justice (dissenting).

In Mays v. Burgess,[1] this court decided that the injunction of June 30, 1944 was valid. That decision is still law. But it does not follow that the order of September 27, 1945, which is now on appeal, should be affirmed. By this order the District Court without making findings, or even considering testimony, on vital questions of fact,[2] has committed appellant for contempt unless she complies with the injunction of 1944.

This court's former decision was based primarily on one essential finding of fact. This finding was that the neighborhood of the premises in suit continued to be, as it had been when the restrictive covenant was made, entirely white, and that enforcement of the covenant would therefore accomplish its purpose of preserving such a neighborhood and maintaining property values. This finding was based, in turn,

largely upon an underlying finding that "no colored people occupy any property in the particular block with which we are concerned, nor in the block adjacent thereto on First Street in either direction."[3] Beyond present dispute the facts then were as this court stated them. But in the present contempt proceeding, appellant has filed in the District Court an affidavit which states that "since the time of the said decree and judgment referred to and the filing of the motion to adjudge in contempt * * * there has been a change in the neighborhood in that four colored families have moved in the adjoining 2100 block of First Street, Northwest, showing that the trend is definitely colored, and that others have purchased property in that locality but not yet occupied same." Nothing in the record contradicts this testimony.

The former decision of this court expressly left in effect the rule of the Hundley case[4] that a covenant of this sort will not be enforced when, because the character of the neighborhood has changed, the covenant can no longer accomplish its purpose and its enforcement would probably depreciate the property values which it was intended to enhance. If the facts stated in the affidavit are true it was necessary for the District Court to reconsider, in the light of these new facts, the applicability of the Hundley rule to this case. Moreover the covenant in suit, which at the time of the former trial had more than two years to run, now has only ten months to run. Proximity in time of colored occupancy may have as much bearing as proximity in space, or even more bearing, upon the questions whether it is still possible to preserve the sort of neighborhood which the makers of the covenant intended to preserve and whether enforcement of the covenant is likely to increase or diminish the value of the restricted property. I think it was the District Court's duty to make findings of fact upon these questions and to consider, in the light of such find-

[1] 79 U.S.App.D.C. 343, 147 F.2d 869, certiorari denied 65 S.Ct. 1406; "Mr. Justice Murphy and Mr. Justice Rutledge are of opinion that certiorari should be granted. Mr. Justice Reed and Mr. Justice Jackson took no part in the consideration or decision of this application."

[2] Though the court made no formal findings of fact or conclusions of law, the order expressly states the facts upon which it is based. These facts are that the injunction was granted and affirmed, and

that it was not complied with upon appellees' demand. The court's view evidently was that no other facts were relevant. Accordingly the order does not mention either the affidavits to which I shall refer, or the facts which those affidavits assert and which appellees have not denied.

[3] Mays v. Burgess, 79 U.S.App.D.C. 343, 345, 147 F.2d 869, 871.

[4] Hundley v. Gorewitz, 77 U.S.App.D.C. 48, 132 F.2d 23.

ings, whether the injunction of 1944 should be continued, modified or dissolved.

Circumstances are alleged to have changed in other important respects as well. As far as the record shows, appellant did not contend at the original trial in June, 1944, that she would be unable to find accommodations for herself and her family if she were forced to vacate the premises, although she did testify that there had been "an absolute lack of other available properties" when she bought the house in February, 1944, and her counsel orally argued hardship when the case was here on appeal. Accordingly neither the District Court on that trial nor this court on that appeal[5] made any finding of ·fact with respect to the availability of other housing for appellant's family, or expressed any opinion as to the effect which its lack, if established, would have upon appellees' right to an injunction. But in an affidavit which appellant filed in the District Court in the present contempt proceeding, she states that since the denial of certiorari by the Supreme Court she has "made diligent search throughout the city to find a place for herself and her family in which to live and has been unable so to do. It has been impossible even to secure rooms for herself and her family because her sister, who is ill and who has four children ranging in ages from two to ten years, is not acceptable to a rooming house owner, and must, therefore have housing or apartment accommodations. Affiant sets forth that her family consists of herself, her sister Mattie M. Smith, six nieces and a nephew, James Gibson, who has recently returned after three. and one-half years' foreign service with the Armed Forces of the United States." Appellant also filed in this proceeding an affidavit of Geneva K. Valtentine, who is a real estate dealer, president of the Equitable Realty Company, and president of the (colored) Washington Real Estate Brokers Association, Inc. This affidavit states that "after the judgment in this case and the affirmation by the Court of Appeals of the United States and the denial of a writ of certiorari by the United States Supreme Court, this affiant felt she had a moral obligation to the defendant on account of her agency having sold the premises here involved to the defendant, and immediately looked for a place for said defendant Mays and her family to move into. This affiant avers she has consulted practically every real estate agency handling property for colored in the District of Columbia and thus far has been unable to locate a place for said defendant Mays. * * * Affiant states that the only place available for occupancy that has come to her attention is in Maryland, about eight miles from the District boundary, which location is too far from the city for defendant Mays and her sister (who works at night) to travel to and from their employment, there being no public transportation available at the hour of night when her sister finishes work. * * *"

This testimony has not been contradicted. To one who is familiar with the present local housing situation, it appears probable. If it is true, to enforce the injunction against appellant at the present time will subject her and her family to very great hardship. The District Court should therefore have made findings concerning the availability of other housing, and considered them in deciding whether to continue, modify or dissolve the injunction. The restrictive promises of a defendant's predecessors are not to be enforced in disregard of the principle that no injunction should cause extreme hardship to the defendant without commensurate benefit to the plaintiff. Equity is not indifferent to human suffering.

This court rules that the present "case must be deemed to be finally settled" by the previous case. This ruling raises a serious constitutional question. May the validity of a racial covenant be frozen, by judicial action, for the duration of the covenant? The ruling imposes a novel restraint upon the expansion of Negro and mixed areas, makes the acute shortage of Negro housing a little more acute, and substantially benefits no one.

The ruling also imposes a novel limitation upon the equity power of the District Court. It ignores the relatively recent Swift case in which the Supreme Court said: "We are not doubtful of the power of a·court of equity to modify an injunction in adaptation to changed conditions. * * * A court does not abdicate its power to revoke or modify its man-

5 The dissenting opinion, but not the opinion of the court, took the position that we ought to notice the notorious dearth of housing for Negroes in the District of Columbia. Mays v. Burgess, 79 U.S.App. D.C. 343, 348, 350, 147 F.2d 869, 874, 876.

date, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."[6] The trial court's power to revoke or modify its injunction because of subsequent changes in circumstances is not diminished by the fact that the injunction has been upheld on appeal. The Supreme Court had itself upheld the validity of the very injunction which it declared, in the Swift case, that the trial court still had power to revoke or modify.[7] It is of course true, as the opinion of this court says, that a lower court must carry out the mandate of a higher. But this court's former mandate merely "affirmed with costs" the former judgment of the District Court and directed, in the usual form, "that such execution and proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had." This determined no more than that the injunction was then valid and enforceable. The cases on which this court is now relying involved such matters as the jurisdiction of a court, the title to land, the validity of a patent, or rights to interest and costs. In such cases, the meaning of the ordinary mandate is very different. "The distinction", as the Supreme Court said in the Swift case, "is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." [8] Few conditions are more subject to change than the character of a neighborhood, and

---

6 United States v. Swift & Co., 286 U. S. 106, 114, 115, 52 S.Ct. 460, 462, 76 L. Ed. 999.

7 In Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587, the Supreme Court had affirmed a judgment of the trial court of the District of Columbia which overruled motions to vacate a consent decree in an antitrust suit. By that affirmance the Supreme Court had decided "that the consent decree * * * was in all respects valid and enforceable." United States v. California Co-op. Canneries, 279 U.S. 553, 555, 49 S.Ct. 423, 424, 73 L.Ed. 838. It had "upheld the consent decree in the face of a vigorous assault." United States v. Swift & Co., 286 U.S. 106, 112, 52 S.Ct. 460, 461, 76 L. Ed. 999. The defendants had afterwards filed in the trial court a petition to modify the consent decree because of changes in circumstances which were alleged to have occurred after the decree was rendered. The trial court decreed a modification. On appeal, the Supreme Court held that the trial court had undoubted power to modify the injunction (consent decree) "in adaptation to changed conditions." The Supreme Court said: "Power to modify existing, we are brought to the question whether enough has been shown to justify its exercise." The Court reversed the decree of modification solely because it found that no significant changes in circumstances had taken place: "Changes there have been that reduce the likelihood of a monopoly in the business of the sale of meats, but none that bear significantly upon the old-time abuses in the sale of other foods. * * * The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." United States v. Swift & Co., 286 U.S. 106, 114, 115, 117, 119, 52 S.Ct. 460, 463, 76 L.Ed. 999.

Cf. Milk Wagon Drivers Union of Chicago v. Meadowmoor Dairies, Inc., 312 U.S. 287, 298, 61 S.Ct. 552. 557, 85 L.Ed. 836, 132 A.L.R. 1200: "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. * * * Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted."

The application of this principle to the enforcement of restrictive covenants has been recognized. In affirming a permanent mandatory injunction for compliance with a restrictive building covenant, the Supreme Court of Wisconsin said: "The appellants object to the form of the judgment as decreeing a perpetual injunction without provision for modification, and say that the proper form of judgment is one that permits modification as conditions in the neighborhood change. The present decree acts only upon existing facts, and is based upon the conditions presently existing in the neighborhood. If and when conditions change, the court will have power to deal with such changed conditions without any embarrassment by reason of this decree. This decree declares the rights of the parties as they exist by reason of the present situation. It cannot affect a changed situation which may arise in the future. We do not think it necessary that the decree specifically authorize modifications as conditions in the neighborhood change." Ward v. Prospect Manor Corporation, 188 Wis. 534, 206 N.W. 856, 861, 46 A.L.R. 364.

8 United States v. Swift & Co., 286 U. S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999.

it is upon the character of a neighborhood that the validity of a restrictive covenant depends.

It is true that appellant has not formally asked for modification or dissolution of the injunction. But Federal Rules of Civil Procedure Rule 54(c),* provides that " * * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Appellant has failed to comply with a valid injunction. However severe the hardship which compliance would entail, it is probably within the discretion of the District Court, on consideration of all the pertinent facts, to impose some penalty. Even if it is shown to be completely impossible to find other housing for herself and her family in the District of Columbia, the court might find that it is not completely impossible for her to vacate the house in suit. But the court cannot abrogate its obligation to exercise discretion, and discretion cannot be exercised without considering all the elements which are essential to a just determination of the cause.[9] Circumstances of serious hardship may well persuade a court, in its discretion, to decline to impose any penalty for non-compliance with a valid injunction. A good example is National Labor Relations Board v. Federal Bearings, Inc.[10] The Court of Appeals for the Second Circuit had ordered employers to reinstate two discharged employees. The employers could have complied with the order but had not done so. Yet the court not only refused to impose any penalty but also held that the employers were not in contempt. They had learned, after the entry of the reinstatement order, that the employees had been convicted of petty larceny for stealing a ladder from a gas station. This discovery, together with the employers' "desire to have in their employ only persons worthy of trust", was the only defense to the charge of contempt. The court held that it was sufficient. Quite aside from the entire question of modifying or dissolving the injunction in the case now before us, it was error to commit appellant for contempt without giving consideration to the undisputed testimony concerning hardship.

In my opinion the order appealed from should be reversed and the cause remanded to the District Court with instructions to take testimony and make findings of fact concerning the present possibility of accomplishing the purposes of the covenant and the present availability of other housing for appellant and her family. The court should then determine in the light of the facts found (1) whether the injunction of June 30, 1944, should be continued, modified, or dissolved and (2) what penalty, if any, may equitably be imposed upon appellant for failure to comply with the injunction.

* 28 U.S.C.A. following section 723c.
[9] Laughlin v. Berens, 73 App.D.C. 136, 118 F.2d 193.

[10] 2 Cir., 109 F.2d 945.