**UNITED STATES of America**

**v.**

**Lillian WINTNER and Alexander Brien, Adm'r of Estate of Alex S. Wintner, deceased.**

**Civ. A. No. 35830.**

United States District Court
N. D. Ohio, E. D.

Sept. 4, 1964.

48

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, for plaintiff.

Richard Katcher and Sheldon Gitelman, Cleveland, Ohio, for Lillian Wintner.

Sanders & Sanders, Cleveland, Ohio, Attys. for Alexander Brien.

KALBFLEISCH, District Judge.

The Court has for consideration the following motion of the plaintiff:

"Plaintiff moves the Court to vacate the judgment entered herein on January 2, 1962, and enter judgment in favor of the plaintiff and against the defendant Lillian Wintner in the amount of $18,274.65 and costs, on the following grounds:

"1. This Court filed its opinion in this action on December 8, 1961. 200 F.Supp. 157. Pursuant thereto, the Court entered judgment on January 2, 1962, in the amount of $26,002.09, plus interest and costs, in favor of the plaintiff and against the defendant Lillian Wintner. That judgment was affirmed by the Court of Appeals for the Sixth Circuit in an order dated January 18, 1963. 312 F.2d 749. However, on January 6, 1964, the Supreme Court of the United States, in a *per curiam* decision, granted a writ of certiorari and reversed the judgment. (18 AFTR 2d 340 [375 U.S. 393, 84 S.Ct. 451, 11 L.Ed.2d 411].) A certified copy of the judgment of the Supreme Court was mailed by the Clerk of the Supreme Court to the Clerk of this Court on January 31, 1964.

"2. In its opinion of December 8, 1961, this Court held the doctrine of marshalling of assets applicable to the insurance proceeds involved. In reversing the decision of this Court, the Supreme Court gave no reasons, but cited its decision in Meyer v. United States, decided December 16, 1963 (12 AFTR 2d 6141 [375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293]), where it held the marshalling doctrine not applicable to insurance proceeds, under similar circumstances. However, without

application of the marshalling doctrine, under the facts of the instant case, the plaintiff is entitled to recover the sum of $18,274.65, since, without application of that doctrine, the defendant Lillian Wintner received the cash values of insurance policies in that amount, subject to federal tax liens thereon. United States v. Bess, 357 U.S. 51 [78 S.Ct. 1054, 2 L.Ed.2d 1135]. Thus, although the judgment of January 2, 1962, in the amount of $26,002.09, plus interest and costs, cannot stand and must be vacated under the Supreme Court's decision, the plaintiff is entitled to judgment in a lesser amount, $18,274.65 and costs."

The defendant attacks the foregoing motion with the contention that this Court is bound by the mandate of the Supreme Court and therefore may not rehear any of the issues involved. This contention of the defendant requires the Court to determine the scope and effect of the Supreme Court's *per curiam* opinion in Wintner v. United States, 375 U.S. 393, 84 S.Ct. 451, 11 L.Ed.2d 411, such *per curiam* opinion being, "The petition for writ of certiorari is granted and the judgment is reversed. Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318."

The defendant's contention rests upon the following authorities: Sibbald v. United States, 12 Pet. 488, 492, 9 L.Ed. 1167, 1169 (1838); In re C. & A. Potts & Co., 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994; Wenborne-Karpen Dryer Co. v. Cutler Dry Kiln Co., 2 Cir., 21 F.2d 692; Eastern Cherokees v. United States, 225 U.S. 572, 573, 32 S.Ct. 707, 56 L.Ed. 1212; In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414; Federal Home Loan Bank of San Francisco v. Hall, 9 Cir., 225 F.2d 349; Gibbons v. Brandt, 7 Cir., 181 F.2d 650; Mays v. Burgess, 80 U.S.App.D.C. 236, 152 F.2d 123; 5B C.J.S. Appeal & Error § 1965, pp. 576-577; Ohio Power Co. v. United States, 157 F.Supp. 158, 140 Ct. Cl. 531; National Association for the Advancement of Colored People v. Alabama, 360 U.S. 240, 79 S.Ct. 1001, 3 L.

Ed.2d 1205; and defendant further says the following rules of the Supreme Court support her contention: Rules 24(1), 40(1) (d) (1), and 40(3), and also Rules 23(1) (c) and 40(1) (b) (1).

The defendant in her brief quotes certain excerpts from her petition for certiorari and the responses made thereto by the plaintiff and, based upon such excerpts and the authorities above cited, insists that this Court is limited by the reversal in Wintner, supra, to vacating the Court's former judgment of January 2, 1962 and entering judgment in favor of the plaintiff in the amount of $503.85.

This Court does not have before it any of the papers filed in the appeal from this Court's original decision to the Circuit Court of Appeals or to the United States Supreme Court; however, the Court can determine whether it may consider plaintiff's claim to $18,274.65 without knowledge of the subsidiary issues which may have been revealed by the parties on appeal. The Supreme Court in Hartford Life Ins. Co. v. Blincoe, 255 U.S. 129, 41 S.Ct. 276, 65 L.Ed. 549 (1921) clearly stated the governing principles regarding the effect of a prior reversal by the Supreme Court:

"Counsel, however, admits that the question of the inclusion of the tax was not discussed, but insist that 'the question was in the record, was necessarily involved, and was presented,' and invokes the presumption that whatever was within the issue was decided; in other words, that the case was conclusive not only of all that was decided, but of all that might have been decided.

"From our statement of the issues it is manifest that the quotation from the opinion has other explanation than counsel's, and we need not dwell upon the presumption invoked or the extent of its application in a proper case. * * * The most that can be said of any question that was decided is that it became the law of the case and as such binding on the Supreme Court of the state, * * * Certainly, omissions do not

constitute a part of a decision and become the law of the case, nor does a contention of counsel not responded to. The element of taxes in the assessment was not considered by the Supreme Court, and in this court the Connecticut judgment and its effect were the prominent and determining factors. * * *

"It was urged, it is true, in the brief of counsel that the assessment 'was void because it included money for taxes erroneously claimed to be exacted under the laws of Missouri.' No notice, however, was taken of the contention and no influence given to it or to the effect it asserted. If it made any impression at all it was obviously as a state question dependent upon the state statutes upon which we would naturally not anticipate the state courts, the case necessarily going back to them." (Pp. 136–137, 41 S.Ct. p. 278.)

See also United States v. Haley, 371 U.S. 18, 83 S.Ct. 11, 9 L.Ed.2d 1 (1962); Southern Ry. Co. v. Commonwealth of Kentucky, 284 U.S. 338, 52 S.Ct. 160, 76 L.Ed. 327 (1932); and Charles Wolff Packing Co. v. Court of Indus. Relations, 267 U.S. 552 (1925). In Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963), the case cited as controlling in the reversal of Wintner, the Supreme Court totally ignored the plaintiff's rights absent the marshaling doctrine. Of compelling importance is the Court's declaration in Meyer that:

"The narrow question remaining is whether in such a situation the doctrine of marshaling of assets is compelled." (P. 236, 84 S.Ct. p. 321.)

Applicability of the marshaling doctrine was the only issue decided in Meyer, and therefore the plaintiff's claim that it is entitled to $18,274.65 without applying the marshaling doctrine has yet to be considered in this case. The pleadings, record, stipulations and briefs in the original submission of the case to this Court fully presented the alternate theory now sought to be decided under the motion before the Court, said alternate theory not having been determined in the original decision of this Court due to its reliance on the marshaling doctrine.

In opposition to plaintiff's present motion the defendant contends that even if it is determined that the Court has jurisdiction to consider the plaintiff's claim to a judgment for $18,274.65 plaintiff cannot recover the amount sought but is entitled to only $503.85.

From the stipulation of the parties it is admitted that Alex Wintner owned eight life insurance policies with a total face value of $87,500.00, which named the defendant, his wife, as beneficiary. He retained the usual powers under such policies, namely, to change the beneficiaries, demand the cash surrender value, and assign the policies. On December 13, 1948, he assigned these policies to a bank as collateral security for the repayment of a loan, and the assignments provided that in the event of his death the bank could satisfy its claim out of the net proceeds of the policies.

At the time of Mr. Wintner's death, June 8, 1954, $34,000.00 was due on the bank loan and the cash surrender value of the eight policies was $34,503.85. On June 21, 1954, the Columbus Mutual Life Insurance Company, which had issued two of the eight policies on Mr. Wintner's life having a combined face amount of $40,000.00, paid $34,000.00 to the bank in full satisfaction of Mr. Wintner's indebtedness to the bank, and the balance of $6,009.60 was paid to the defendant, Mr. Wintner's widow and beneficiary. At the time of Mr. Wintner's death the two policies issued by the Columbus Mutual Life Insurance Company had a cash surrender value of $16,229.20. The bank loan having been paid in full from these two policies, the bank, on June 23 and 24, 1954, released assignments to it of the six remaining policies and the insurance companies involved paid the combined face amount of the six policies ($47,500.00) to the defendant, Mr. Wintner's widow and beneficiary. The cash surrender value of these six policies at the time of Mr. Wintner's death was $18,274.65, the sum now claimed by the plaintiff.

Section 3670 of the Internal Revenue Code of 1939 provides:

*"Property subject to lien*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3670 creates no property rights but merely attaches consequences to rights created under state law, therefore the Court must initially examine Mr. Wintner's rights in the policies as defined by Ohio law. United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958).

 Since Mr. Wintner had the power to demand the cash surrender value of each insurance policy he had "property" or "the rights to property" as defined in Section 3670. Bess, supra, p. 56, 78 S.Ct. 1054. In Katz v. Ohio National Bank, 127 Ohio St. 531, 535, 191 N.E. 782 (1934), the law of Ohio is stated as follows:

"[T]he assignment of a life insurance policy as collateral security does not divest the assignor of his general property in the policy, but creates only a lien in favor of the assignee to the extent of the debt owed." See also Columbian Nat. Life Ins. Co. v. Welch, D.C., 15 F.Supp. 777 (1936).

Thus, during his lifetime and immediately prior to his death, Mr. Wintner had an interest in the cash surrender values of his policies which he could have realized at any time by first satisfying his obligation to the bank. The tax lien attached to the cash surrender value of each insurance policy during Wintner's lifetime, and when the total cash surrender value became vested in Mrs. Wintner at his death, subject to the liens of the bank and the plaintiff (Katz, supra; Colum-

bian Nat. Bank, supra), the tax lien then "followed the property" into the hands of the defendant. Bess, supra, 357 U.S. p. 59, 78 S.Ct. 1054.

The Supreme Court's reversal, which disallowed the doctrine of marshaling assets affects only the proceeds of the two Columbus Mutual policies which were employed to extinguish the bank's lien.

 The cash surrender values of the eight policies owned by Mr. Wintner at the time of his death were encumbered by the plaintiff's tax lien. The bank's senior lien having been extinguished, the plaintiff may recover the total cash surrender value of the six remaining policies, the face amounts of which were paid to the defendant, without the necessity of marshaling assets.

The judgment entered by this Court on January 2, 1962, will be vacated and judgment will be entered in favor of plaintiff and against the defendant in the sum of $18,274.65.