(110 So. 891)

No. 27655.

### Succession of WARREN.

(Nov. 2, 1926. Rehearing Denied Jan 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Wills ☞570—"Book value" of testator's stock, at which other stockholders were to buy, under will, was value shown by audit at death.**

Where president of corporation stipulated in will that other stockholders should be allowed to buy his stock at "book value," defining it as value shown by audit at death, they may buy at value found by accountants, who allowed certain income tax claims as contingent liabilities, since testator knew of such items when he defined "book value."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Book Value.]

2. **Appeal and error ☞1056(6)—Suit to construe will will not be remanded to allow admission of excluded evidence which would not prevent affirmance.**

Suit to construe will will not be remanded to allow admission of excluded evidence, where judgment would have been affirmed, even if it had been admitted.

3. **Wills ☞439—Testator's intent controls construction of will (Rev. Civ. Code, art. 1712).**

Intention of testator as expressed in will is controlling in suit to construe will, in view of Rev. Civ. Code, art. 1712.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

On rule by H. O. Barker and others on Canal-Commercial Trust & Savings Bank, executor and trustee of the succession of Harry G. Warren, to sell and deliver certain stock, in accordance with the will of deceased. From judgment ordering stock sold at certain price, executor and trustee appeal. Amended and affirmed.

Spearing, Miller & Mabry, of New Orleans, for appellees.

Dart & Dart, of New Orleans, for appellants.

O'NIELL, C. J. Harry G. Warren, residing in New Orleans, died on the 4th of February, 1925, leaving property exceeding $100,000 in value, and being half of a community estate. He was survived by his wife, but had no forced heirs. Among the assets of the estate were 594 shares of the capital stock of Walker Bros. & Co., Limited, a corporation domiciled in New Orleans, and engaged in the wholesale drygoods business. The deceased was president of the corporation, and was one of the active managers of the business. The other officers, associates of Mr. Warren, and employees of the corporation, were H. O. Barker, owning 110 shares of stock, R. J. Janness, owning 100 shares, P. E. Lacourrege, owning 50 shares, and R. L. Montgomery, owning 45 shares. The total outstanding capital stock was 1,800 shares of the par value of $100 per share. The 594 shares belonging to the estate of Harry G. Warren was appraised in the inventory at $64,746, being $109 per share.

The deceased left an olographic will, in which he appointed the Canal-Commercial

Trust & Savings Bank executor and trustee of his estate, and directed with minute detail how the trust should be administered. The clauses now in dispute, and which we are called upon to interpret, have reference to the disposition of the 594 shares of stock in Walker Bros. & Co., Limited, and are contained in the tenth section or article of the will, in five paragraphs, as follows:

"Tenth. I direct my said executor and trustee to proceed with the liquidation and adjustment of my affairs, particularly the business of Walker Brothers & Company, Ltd., in which I hold a certain interest, using in all its administration good business judgment to safeguard the investments I have made and to protect the assets of my estate.

"I direct that as soon as possible after my death my executor and trustee shall sell at a price not less than book value all of the capital stock owned by me at my death in Walker Brothers & Company, Ltd. The proceeds from such sale to be reinvested by the trustee in good interest paying securities. Said trustee in making said investment having due regard to the safety of the principal rather than to high rate of return. The trustee is empowered to sell any and all bonds and securities from time to time and to reinvest the proceeds in other like bonds, as its judgment may direct.

"As Walker Brothers & Company, Ltd., stock will be one of the principal assets of my estate, I realize that when I am gone that the value of this asset should be immediately converted into cash and for this reason I have authorized and directed my executor and trustee to convert the same into cash.

"As my relations with the officers and employees of Walker Brothers & Company, Ltd., have been very harmonious, I now direct my trustee to first offer the stock as a whole to the officers and employees of Walker Brothers & Company, Ltd., who are actively engaged in promoting the business of the company and who own stock in said company; the right being given to them to purchase in proportion to their respective holdings therein. For the purpose of making this offer and delivery, the board of directors of Walker Brothers & Company, Ltd., shall act as agents for such persons above designated. Such persons shall exercise this right by written notice to the trustee, either through themselves, individually or collectively, or through the board of directors of Walker Brothers & Company, Ltd., and by payment in cash to the trustee of the book value of the said stock holdings on or before six months from date of my death. This right must be exercised by all persons within the class above described. The trustee may likewise give a written notice of its intention to sell the said stock and failure on the part of said persons to exercise the right herein granted within the period aforesaid shall release the trustee from the obligations herein imposed.

"Book value for the purposes of this article shall be taken to mean the value of the stock shown by the audit of the business of the company up to the date of my death."

The Canal-Commercial Trust & Savings Bank accepted the executorship and the trust, and qualified as executor. Thereafter, at the request of the attorneys for the executor and trustee, with the approval of Messieurs Barker, Janness, Lacourrege, and Montgomery, a firm of certified public accountants, namely, Caballero & Miller, made an audit of the business of Walker Bros. & Co., Limited, to the date of the death of Harry G. Warren, February 4, 1925, which showed the book value of the capital stock to be $107.776 per share, making the 594 shares worth $64,018.95. Accordingly, Messieurs Barker, Janness, Lacourrege, and Montgomery notified the Canal-Commercial Trust & Savings Bank that they accepted the privilege given them by the will of the late Harry G. Warren of buying the 594 shares at its book value according to the audit, and they tendered the sum of $64,018.95 to the executor and trustee, and asked for the stock certificates. The executor and trustee objected to the audit, because of certain items that were carried on the books as contingent liabilities, and declined to transfer the stock at the price of the book value shown by the audit. Barker, Janness, Lacourrege, and Montgomery then brought this proceeding by rule to compel the trustee to transfer the stock to them at the book value shown by the audit, and again tendered the $64,018.95 in payment, and deposited the amount into the registry of the

court. Answering the rule, the executor and trustee insisted that the contingent liabilities appearing on the books of the corporation, being additional income taxes claimed by the internal revenue department for the years 1918, 1919, 1920, 1923, and 1924, amounting to $63,484.62, should not be carried on the books as liabilities. The defendant contends that it is not likely that the government will finally insist upon the payment of these additional taxes, and shows that, if they were not carried as liabilities on the books of the corporation, the book value of the stock would be $143.04 per share. The defense or attitude of the executor and trustee is explained in the following two paragraphs in the answer to the rule, viz.:

"That the late Mr. Warren contemplated that the actual value was to be paid for the stock, as shown by a proper audit of the books, and not an audit that carried debatable claims, by way of deduction."

"Respondent further avers that it desires to carry out the will of the late Harry G. Warren, and particularly to sell the stock in question, but is unable to do so with safety and certainty, owing to the diversity of opinion, and is therefore entitled to the aid and assistance of this court in construing the provisions of decedent's will and to determine what is the book value of this stock. And respondent is entitled to this advice because in the absence of knowledge of what constitutes the book value of said stock it is unable to accept the offer made by these plaintiffs."

There was judgment for the plaintiffs, ordering the executor and trustee to transfer the stock and surrender the stock certificates to Messieurs Barker, Janness, Lacourrege, and Montgomery, at the price of the book value shown by the audit, $107.776 per share, and to accept in full payment therefor the $64,-018.95 on deposit in the registry of the court. The defendant, executor and trustee, has appealed from the judgment.

[1] The testator left no doubt as to what he meant by the term "book value" of his stock, because he defined it in his will, viz. "Book value for the purposes of this article shall be taken to mean the value of the stock shown by the audit of the business of the company up to the date of my death." The only question, therefore, is whether the audit made by Caballero & Miller was a true and correct audit, and that depends upon whether the contingent liabilities complained of by the executor and trustee were properly treated as liabilities of the corporation for the purpose of the audit. It is not contended that the items are fictitious, or were trumped up for the purpose of depressing the book value of the stock. The items were carried on the books of the corporation during the lifetime of Harry G. Warren, and there is no good reason to doubt that he, being president of the corporation and taking part in the management of its business, knew that these contingent liabilities were carried as liabilities on the books of the corporation, and would be reflected in the book value of the capital stock, as shown by an audit of the books. Messrs. Caballero & Miller had been auditing the books at regular and frequent intervals, and rendering semiannual reports to the officers of the corporation during the three years preceding the death of Mr. Warren. All of their audits were submitted to the officers of the corporation and were, as we understand from the testimony of the auditor who made them, similar to the audit made after the death of Mr. Warren, for the purpose of determining the book value of his stock at the time of his death. The report of the last semiannual audit, made previous to the death of Mr. Warren, of date the 31st of December, 1924, is identically like the report of the audit made after his death, and shows, as liabilities of the corporation, all of the contingent liabilities now complained of by the executor and trustee, except an item of only $125, for additional income taxes claimed by the internal revenue department for 1923. According to the report of the audit of December 31, 1924, the

total capital and surplus, or excess of assets over liabilities, was $197,748.96, making the book value of each of the 1,800 shares only $109.86.

Harry G. Warren, being familiar with the financial condition of the corporation of which he was president and one of the managers, knew, approximately, what an audit of the books would reveal as the book value of the capital stock. He knew that the claims for additional taxes for the years 1918, 1919, 1923, and 1924 were carried on the books as contingent liabilities; and he knew that, as these contingent liabilities might never have to be paid, the actual value of the capital stock was perhaps greater than its book value. With that knowledge, he said in his will that, as his relations with the other officers of the corporation had been very harmonious, he gave to them the privilege and advantage of taking over his shares of the capital stock at its book value, which he carefully defined in his will. He stipulated that, if they declined to take the stock at its book value, as he defined it, the executor and trustee should sell the stock to outsiders at the best price available, but not less than the book value. It is not at all likely that an outsider would have taken the risk of these contingent liabilities, or paid a higher price for the stock than its book value. Besides, the corporation was, obviously, a close corporation, whose stock was not listed on the exchange, and had no market value. The value of the stock in such a corporation, to an outsider, depends very largely upon whether he is welcomed to membership by those who are already members and officers of the corporation. That is what the testator meant when he said in his will that he realized that, when he would be gone, his 594 shares of stock in the Walker Bros. & Co., Limited, should be immediately converted into cash; and that is why he directed that, as soon as possible after his death, his executor and trustee should sell all of his stock in the corporation at a price not less than its book value. If Messieurs Barker, Janness, Lacourrege, and Montgomery had declined to take over the stock at its book value, and if the executor and trustee were offering it for sale now to outsiders, no one could doubt the authority of the executor and trustee to sell at the price of the book value, $107.776 per share, as shown by the audit of Caballero & Miller.

[2, 3] During the trial of this rule the attorneys for the trustee and executor tendered as a witness a public accountant, by whom they proposed to prove that these contingent liabilities, complained of, were not proper deductions to be made in computing the book value of this stock; and they tendered also as a witness an estate tax expert for the United States government, by whom they proposed to prove that these contingent liabilities carried in the audit of Caballero & Miller would be ignored by the government in fixing the estate tax against the estate of Harry G. Warren. On the objection of the plaintiffs' attorneys, the testimony was excluded. It is argued on behalf of the appellant that, if we do not reverse the judgment appealed from, we should remand the case to receive the testimony of the two witnesses mentioned. We assume that the witnesses would have expressed the opinions ascribed to them, if they had testified, and yet our opinion is that the judgment appealed from is correct. There is therefore no necessity for remanding the case. We are controlled in our decision by the intention of the testator, as expressed in his will. Rev. Civ. Code, art. 1712. He knew that his associates in business, if they accepted the offer of his stock at its book value, would be protected against these contingent liabilities by an audit of the books; and, in consideration of the harmonious relations that had prevailed between him and them, he gave and be-

queathed to them the advantage which would result in the increased value of the stock if the additional back taxes claimed by the government, and carried on the books of the corporation as contingent liabilities, should never be paid.

Our attention is directed to the fact that, in the judgment appealed from, ordering the executor and trustee to transfer and deliver the stock certificates for the 594 shares of stock, and to accept in full payment therefor the $64,018.95 on deposit in the registry of the court, the judge omitted to say that the transfer and delivery of the stock should be made to Messieurs Barker, Janess, Lacourrege and Montgomery. It was agreed by the attorneys during the argument of the case that we should amend the judgment in that respect, if we should conclude to affirm it.

The judgment is therefore amended so as to provide that the transfer and delivery of the stock certificates for the 594 shares in this proceeding, namely H. O. Barker, R. J. Janness, P. E. Lacourrege, and R. L. Montgomery. As thus amended, the judgment is affirmed at the cost of the succession.

ST. PAUL and BRUNOT, JJ., concur in the decree.