TUTTLE *v.* OHIO BOULEVARD LAND CO.

1. COVENANTS—BUILDING    RESTRICTIONS—RECIPROCAL    EASEMENT
   BINDING ON SUBDIVIDER.
   > A subdivider may not sell with strict restrictions all lots in his
   > subdivision except the corner ones, retain them until after a
   > fine residential district is built up, and then dispose of them
   > freed from any reciprocal easements, and thus permit a place
   > of business on every corner.

2. SAME—CONSTRUCTIVE NOTICE OF VIOLATION OF RESTRICTIONS.
   > The filing of an application for a permit to build an apartment
   > house, accompanied by plans showing spaces on the ground
   > floor for "lounge," "coffee shoppe," and dining room, but
   > which did not show that said spaces were to be eventually used
   > for a grocery store and butcher shop, a drug store, and a public
   > restaurant, was not constructive notice that the ground floor
   > of the building was to be used for business purposes.

3. INJUNCTION—LACHES—REASONABLE PROMPTNESS.
   > Where property owners in a high-class residential district acted
   > with reasonable promptness after they discovered that the
   > ground floor of an apartment building was to be used for
   > business purposes, a court of equity will not refuse to enjoin
   > the violation of the restrictions on the ground of laches.

Appeal from Wayne; Webster (Arthur), J. Submitted October 17, 1928. (Docket No. 73, Calendar No. 34,001.) Decided December 4, 1928.

Bill by Arthur J. Tuttle and others against the Ohio Boulevard Land Company, Jacob Denenberg, and Michael Kessler to enjoin the violation of building restrictions. From a decree for plaintiffs, defendants appeal. Affirmed.

*Warren, Hill & Hamblen* (*Charles E. Lewis* and *Charles F. Ives*, of counsel), for plaintiffs.

*Groesbeck, Sempliner, Kelly & Baillie* and *Friedman, Meyers & Keys,* for defendant Ohio Boulevard Land Co.

*Morse & Goldstick,* for defendants Kessler and Denenberg.

FELLOWS, J.   Greenlawn subdivision, through which run Collingwood and Lawrence avenues, is a high-class residential district. It is all built up with fine residences. The language of the restrictions in conveyances of lots does not inhibit the erection of apartment houses. Defendant corporation erected without objection or protest an apartment house on lots 68, 69, and 70 at the corner of Collingwood avenue and Third avenue. Upon learning that portions of the ground floor on the corner and fronting on Third avenue were being used for business purposes, *i. e.,* grocery store and butcher shop, public restaurant and drug store, plaintiffs, who reside on Collingwood and in the immediate vicinity, filed this bill. The *locus in quo* is a block away from lot 86 of the subdivision, also located on Collingwood avenue, and which was the subject-matter of the litigation which reached this court in *Sanborn* v. *McLean,* 233 Mich. 227. The trial judge held that the instant case was controlled by that case, and enjoined the maintenance of the drug store and the grocery and butcher shop, and restrained the operation of a dining room for others than tenants of the building. Defendants appeal, but concede that upon the main question the *Sanborn Case* is controlling unless upon a reconsideration we overrule it. Counsel say in their brief:

"On the question of restrictions, the facts of *Sanborn* v. *McLean,* 233 Mich. 227, are unquestionably identical with the facts in the instant case as shown

in the record but not as disclosed in the opinion. For this court to uphold our contention is undoubtedly to reverse its finding in *Sanborn* v. *McLean*. It is only our implicit faith in the soundness of our doctrine that prompts us to attempt so arduous a task.''

The earnestness of counsel has prompted us to again consider the question before us in the *Sanborn Case*. As a result of such reconsideration, we are strengthened rather than weakened in our belief that the correct rule was there announced and applied. It is doubtless true that we went further in that case than we had been called upon to go in preceding cases. It was there recognized that our earlier cases were not on all fours with the one in hand, but it was pointed out that the underlying principles laid down in earlier decisions required the holding there indulged in. If a subdivider could sell with strict restrictions all lots in his subdivisions except the corner ones, which he retained until after a fine residential district was built up, and could then dispose of such corner lots freed from any reciprocal easements and thus permit a place of business on every corner, there would be but little value to building restrictions, and their enforcement would depend on the integrity or the avarice of the subdivider. We have no disposition to change the rule announced in the *Sanborn Case*, and, after careful consideration given to it, reaffirm it.

As usual in this class of cases, it is urged that plaintiffs have lost their rights by laches. It is insisted that the filing of the application for a permit with the department of buildings of the city was constructive notice that the ground floor of the apartment house was to be turned over to business. It is doubtful if the filing of such an application is

notice of its contents to the inhabitants of the subdivision. But in the instant case the plans accompanying the application did not give notice that the ground floor was to be turned over to business. They did show a space for the "lounge," which was used eventually for the grocery store and butcher shop, and a space for a "coffee shoppe," which was eventually used for the drug store. There was also space for dining rooms. Had plaintiffs fully examined the plans filed to obtain the permit they would have had no notice that the premises or any part of them were to be turned over to stores or to be used for general business purposes. There is no constructive notice in the case.

During construction there was a board fence around the premises, and the public was kept out. Inquiries of those in charge elicited only the statement that the building was to be a high-class apartment house. Such a building was permitted in the subdivision. The drug store and the grocery and butcher shop were opened after the middle of June. Judge Tuttle, one of the plaintiffs, had been in Bay City holding court during most of June, returning to his home, which was diagonally across from the apartment house, the evening of July 1st. The next morning he found at his door an advertisement of the opening of the drug store. He went to the apartment building, but got scant recognition from the manager or those in either of the stores. He consulted with other residents, and attorneys were hired that day, and a few days later, and as soon as the bill could be prepared, this suit was instituted. It is insisted that plaintiffs should have investigated the premises, that they had notice by advertisements appearing in the newspapers, and could have found out sooner. But people having homes in purely resi-

dential districts are not bound to prowl around building operations or apartment houses or patrol the streets to daily assure themselves that the building restrictions of the subdivision are being observed. If they act with reasonable promptness after they know or should know of such violations, they will not be turned from a court of equity on the ground of laches. There was no laches either as matter of law or as matter of fact.

The decree will be affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.