VOORHEIS *v.* POWELL.

1. COVENANTS—BUILDING RESTRICTIONS—WAIVER.
   Waiver of building-line restriction by some lot owners is not binding on others who insist upon its strict observance.

2. SAME—EFFECT OF BREACH OF BUILDING RESTRICTIONS.
   Even after one or more breaches of building restriction, equity will grant relief against further violation if restriction is shown to be of value to complainant, unless such breaches have resulted in subversion of original scheme of development, resulting in substantial change in neighborhood.

3. SAME—WAIVER—ESTOPPEL.
   Failure of lot owners to object to violation of building restriction does not estop them from asserting right to continued enforcement, where it is shown that they will be seriously damaged if proposed violation is permitted.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 26, 1932. (Docket No. 115, Calendar No. 36,763.) Decided January 3, 1933.

Bill by Elmer W. Voorheis and others against Robert M. Powell and another to enjoin violation of a building-line restriction. Bill dismissed. Plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Warren, Hill & Hamblen (Charles E. Lewis* and *Charles F. Ives,* of counsel), for plaintiffs.

*McLeod, Fixel, Abbott & Fixel* and *Arthur J. Abbott,* for defendants.

BUTZEL, J. Elmer W. Voorheis, and the 25 other plaintiffs herein, are owners of residences fronting

On right to enforcement of restrictive covenant as affected by change in neighborhood, see annotation in 28 L. R. A. (N. S.) 706; 54 A. L. R. 812.

on Collingwood avenue in Greenlawn subdivision, being the southerly 682 feet of quarter section 25, 10,000-acre tract, in Detroit, Michigan. The portion of Collingwood avenue lying within the subdivision runs west from Woodward avenue to Hamilton boulevard, and is also traversed by Second and Third avenues, all important thoroughfares running north and south. The property of 13 of the plaintiffs is situated in the first block of the subdivision west of Woodward avenue, a choice residential district. Restrictions in this subdivision have been previously considered and upheld in *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212), and *Tuttle* v. *Ohio Boulevard Land Co.,* 245 Mich. 188.

The present controversy arose over those restrictions that provide that all residences on the street shall be built 20 feet back from the street line. The subdivision contains 88 lots, each approximately 50 feet in width, fronting on Collingwood avenue, and two additional corner lots, facing Woodward avenue and each having a frontage of 200 feet on Collingwood avenue. These two lots are referred to as the ''Woodward avenue lots.'' An alley separates them from those immediately to the west which front on Collingwood avenue. Stores facing Woodward avenue and an apartment building fronting on Collingwood avenue have been built on each of them. The apartment buildings have been built up to the street line in violation of the building restrictions. The 20-foot set-back, however, has been rigidly observed in the erection of all the other buildings on the street except the Wilshire apartment hotel at the northeast corner of Third and Collingwood avenues. Otherwise, the buildings consist of substantial residences, facing ornamental lawns at least 20 feet deep.

The restrictions providing for the 20-foot set-back of the building line on the Collingwood avenue side of the Woodward avenue lots were waived by acquiescence or consent on the part of the other lot owners. Some of the plaintiffs excuse their failure to make timely objections to the violations of the building-line restrictions on these lots on the ground that they did not know at the time that the building-line restrictions extended to them, since their size and shape differed from the others, which were also subjected to more rigid restrictions in some respects. The general restrictions as to the use of these lots, created by a reciprocal negative easement, did not apply to these Woodward avenue lots. See *Sanborn* v. *McLean, supra.*

Some of the plaintiffs testified that when the construction of the Wilshire apartment hotel building was begun, the lot was inclosed with a fence seven feet in height, and that, on inquiry, they were informed that the building-line restrictions would be observed; that when they subsequently discovered its violation, they deemed it too late to object because the building had progressed to a point where it would have been very costly to tear down the very elaborate and ornamental portion of the building that had been erected only slightly over 10 feet from the street line. The circuit judge held that the erection of the Wilshire apartment hotel in no way affected the attempted violations of the restrictions on a lot almost two blocks distant therefrom.

In this suit, plaintiffs seek to enforce the building-line restrictions on lot two, which is situated on the south side of Collingwood avenue immediately west of and bordering upon the same alley that abuts the west walls of the apartment house built on the rear

of the Woodward avenue lot. A house conforming with the restrictions was formerly located on lot two, but was torn down.

On November 1, 1924, George W. Hurd, the owner of a lot on the north side of the street in the first block off Woodward avenue, circulated a petition among the owners of the block. It was signed by a large number of them, including several of the plaintiffs. The signers agreed to waive and release the restrictions on the block to the extent of permitting the erection of brick and stone apartment buildings, flats, etc., on any part of their lots. It was represented that the waiver was not to become effective unless signed by all of the owners. Two of the parties plaintiff owning lots in the block, as well as the owner of lot two, did not sign the waiver. Some of the plaintiffs claim they did not understand the tenor of the instrument, and that it was distinctly agreed that, if it was not signed by all of the residents, it would not become effective. The waiver was used by a real estate agent in a futile effort to sell one of the lots, but it was later returned to Mr. Hurd, who destroyed it. The document, however, had been photostated by some interested party, and a copy thereof came into the possession of the owner of lot two. The lot was sold to Robert M. Powell, who, with the Leto Building Company, are defendants herein. An attorney, employed by Powell to examine the abstract, after reading the waiver and making a physical examination of the lot and neighborhood, advised that a multiple-apartment building might be built up to the street line on lot two.

Upon commencement of the building operations, the plaintiffs filed a bill to enjoin the violation of the building-line restriction. The trial judge held that

defendants were not parties to the written waiver, and had no right to rely upon it as a contract; that the parties plaintiff who had signed the so-called waiver had barred themselves from taking a position inconsistent therewith; that there was no waiver by reason of the violation of the restriction by the Wilshire apartment hotel, inasmuch as it was too far distant to give the owner of lot two any reason to believe that there would be no objection raised by his neighbor to the erection of a building up to the street line. He, however, held that, as far as lot two was concerned, there was a waiver predicated upon the building of the apartment houses on the Collingwood avenue side of the Woodward avenue lots. He found that there was no testimony establishing any peculiar damage to any plaintiff arising from this contemplated building that differed in its general nature from the injury, if any, caused by the apartments built up to the street line on the Collingwood avenue side of the Woodward avenue lots; that the failure of plaintiffs to object to these buildings gave a purchaser the right to assume that other similar breaches, attended by no more actual damage to plaintiffs, would likewise be permitted, and that this applied equally to all parties plaintiff and estopped them from offering objections to defendants' building up to the lot line.

John J. Frantz, one of the plaintiffs, is owner of lot 10, situated 400 feet from lot 2. Jesse L. Sanborn, another plaintiff, is the owner of the east 15 feet of lot 86 and west 20 feet of lot 87, situated on the north side of the street and in the same block as lot 2. They did not sign the written waiver, and are in no manner estopped by it. While there is considerable doubt whether the written waiver is binding any longer on its signatories, decision on

that point is unnecessary. Even if the waiver were still in full force as to some of the plaintiffs, the most defendants could claim would be a misjoinder of some parties plaintiff. The bill, however, would remain good as to those plaintiffs who did not sign the waiver. Each lot owner has a reciprocal negative easement in the restrictions and may insist upon their observance by the others. The willingness of some of the lot owners to waive the restriction is not binding on the others who insist upon its strict observance.

In the very recent case of *Evangelical Lutheran Church* v. *Sahlem,* 254 N. Y. 161 (172 N. E. 455), the owner of part of a tract of land, divided into 128 lots and restricted to single-family dwellings, sought to enjoin the building of a church by a religious communion. The lot had never been previously used for a church building. In enjoining the violation of the restrictions, the court said:

"Here, in the case at hand, no process of balancing the equities can make the plaintiff's the greater when compared with the defendant's, or even place the two in equipoise. The defendant, the owner, has done nothing but insist upon adherence to a covenant which is now as valid and binding as at the hour of its making. His neighbors are willing to modify the restriction and forego a portion of their rights. He refuses to go with them. Rightly or wrongly, he believes that the comfort of his dwelling will be imperiled by the change, and so he chooses to abide by the covenant as framed. The choice is for him only. Neither at law nor in equity is it written that a license has been granted to religious corporations, by reason of the high purpose of their being, to set covenants at naught. Indeed, if in such matters there can be degrees of obligation, one would suppose that a more sensitive adher-

ence to the demands of plighted faith might be expected of them than would be looked for of the world at large. Other owners may consent. One owner, the defendant, satisfied with the existing state of things, refuses to disturb it. He will be protected in his refusal by all the power of the law.''

Defendants contend that acquiescence in the erection of the apartment buildings on the corner lots waived the building-line restriction as to all the other lots.

The cases of *Cherry* v. *Board of Home Missions*, 254 Mich. 496, and others, relied upon by defendants and cited by the trial court, are not at all in point. The correct rule is stated in *Misch* v. *Lehman*, 178 Mich. 225, as follows:

''The true rule seems to be that, even after one or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood.''

See, also, *Oliver* v. *Williams*, 221 Mich. 471; *De-Galan* v. *Barak*, 223 Mich. 378; *Burns* v. *Terzian*, 233 Mich. 627; *Bischoff* v. *Morgan*, 236 Mich. 251; *Jefferson Park Land Co.* v. *Netting Land Co.*, 239 Mich. 377.

It is apparent that the owners of some of the lots in the subdivision do not object to the contemplated violation of the restriction. If defendants' contentions were correct, the owners of lot three would no longer be bound after the violation of the restriction on lot two, adjoining, nor would the owner of lot four after violation as to lot three, and so on. In this manner the restrictions could be quickly

whittled away, and plaintiffs deprived of a very valuable right affecting their homes.

Plaintiffs will be damaged seriously if the violation of the restriction is permitted, and their failure to object to the two single violations on the Woodward avenue lots and the one at the corner of Collingwood and Third avenues, all under peculiar circumstances and conditions, does not estop them from asserting their right to the continued enforcement of the restriction on lot two.

The decree of the trial court is reversed, and one entered in accordance with this opinion. Plaintiffs will recover costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.