J. St. Clair Favrot, Dist. Atty., Baton Rouge, for appellant.

Benton & Moseley, Baton Rouge, for defendant-appellee.

FOURNET, Chief Justice.

The issues in this case on appeal here are identical, from a factual and legal standpoint, with those resolved this day in

State of Louisiana v. Jemison, 125 So.2d 363, and for the reasons therein assigned the judgment appealed from is affirmed.

HAWTHORNE, J., concurs.

■

125 So.2d 365

**John T. GUYTON**

**v.**

**James H. YANCEY.**

No. 44980.

Dec. 12, 1960.

Rehearing Denied Jan. 9, 1961.

1. The amount involved in this case is $200.

Charles M. Peters, Roy B. Tuck, Jr., Hugh T. Ward, Shreveport, for relator.

Hargrove, Guyton & Van Hook, Shreveport, for plaintiff-respondent.

HAMITER, Justice.

Herein, on the demand of John T. Guyton who is a home owner in Eastridge Subdivision of the City of Shreveport, the district court issued a permanent injunction against James H. Yancey prohibiting him from committing a threatened violation of an alleged building restriction affecting his parcel of ground located in the mentioned subdivision. The judgment was affirmed by the Court of Appeal (115 So.2d 622, 623), and the question of its correctness is now before us on a writ of certiorari

Eastridge Subdivision, containing approximately eighty acres, is bisected by Gilbert Avenue which is a main thoroughfare running no ·th and south, this resulting in a seemingly dividing thereof into two parts more or less equal. According to the original subdivision plat filed of record in 1926 the forty acres on the west of such street contained thirty-four lots having areas of from approximately one-half .acre to one and one-half acres, while the forty acres to the east had but twelve lots which varied from about two to five acres.

Shortly after the recordation of such plat the subdividers (the owners) entered into an agreement respecting the use of the property which contained, among other things, the following stipulations: All lots must be used exclusively for residential purposes; none could be sold to any person of the Negro, Mexican or Mongolian races; the construction of any home costing less than $10,000 was prohibited; and no main residential building could be erected nearer than thirty feet to either side property line or within eighty feet from the front property line of any lot.

Plaintiff and defendant became the respective owners of nearby lots located in the western portion of the forty acres lying west of Gilbert Avenue. That of the defendant is the only undeveloped parcel in such area.

The instant suit was instituted after plaintiff discovered that the defendant had commenced the erection of a main residential building which would violate the eighty foot front setback restriction by some twenty-five to thirty feet.

The defendant concedes that originally the mentioned restrictive stipulations were real rights that ran with the land and were valid and enforceable. Further, he admits that the building he plans to construct will, if he is not enjoined, substantially violate the front setback restriction. However, he pleads and insists that the right to enforce any of the covenants stipulated in 1926 has since been lost by waiver or relinquishment through failure of the landowners within the subdivision to protest and object to general and continuous violations of the imposed restrictions.

Defendant, in other words, does not contend that violations of the front setback provision have resulted only in a waiver of that particular restriction. Rather, he takes the position that the front line deviations which he points out, considered along with other infractions and changes throughout the subdivision, constituted a complete subversion of the original scheme of development; and that, consequently, all imposed restrictions must be considered as having been abandoned and relinquished. In this connection his counsel, to quote from their brief to this court, say: "The record herein will reveal that defendant-relator contended initially and has insisted throughout this litigation that not just the eighty (80) foot setback requirement contained in the restrictive clauses, one small component of the comprehensive plan of development devised for Eastridge Subdivision, has been abandoned, but that the *entire scheme of development* as conceived and established by the subdividers has been abandoned and discarded by those owning land in Eastridge Subdivision, and that an entirely new and different scheme has emerged in its stead. * * *"

With reference to the defense thus urged the following is said in Thompson on Real Property (Permanent Edition), Section 3640: " * * * When violations of restrictive covenants in deeds are permitted to such an extent as to indicate that the entire

restrictive plan has been abandoned, objections to further violations is barred, * *."

Again, in determining whether violations amount to an abandonment, Thompson (in the mentioned volume, Section 3650) approvingly quotes as the general rule the language of the court in Ocean City Land Company v. Weber, 83 N.J.Eq. 476, 91 A. 600, reading: " * * * If there is a general scheme for the benefit of a great number of persons, and then, either by permission or acquiescence, or by a long chain of things, the property has been either entirely or so substantially changed as that the whole character of the place or neighborhood has been altered so that the whole object for which the covenant was originally entered into must be considered to be at an end, then the covenantee is not allowed to come into the court for the purpose merely of harassing and annoying some particular man where the court could see he was not doing it bona fide for the purpose of effecting the object for which the covenant was originally entered into. * * *'

That this is the universally accepted rule is recognized in 14 American Jurisprudence, Sections 295–298 wherein it is stated: "Whether there has been such acquiescence as to defeat the enforcement of a restrictive covenant depends upon the circumstances of each case, and the character and materiality of the permitted breach. It has been asserted as a general principle that as long as the restrictive agreements are of any value to

the party possessing rights thereunder, he may enforce them. This would seem to be subject to the condition that there has not been an entire change in the neighborhood.

\*　\*　\*　\*　\*　\*

"Nonobjection to trivial breaches of the covenant does not result in loss of the right to enforce the covenant by injunction. Generally, acquiescence in violations of a restrictive covenant which are immaterial and do not affect or injure one will not preclude him from restraining violations thereof which would so operate as to cause him to be damaged.

"The minor character of the violations has been emphasized in cases sustaining the right to enforce the covenant. \* \* \*

\*　\*　\*　\*　\*　\*

"It is sometimes made a condition of the nonenforcement of a restrictive covenant that the acquiescence or waiver result in an abrogation of the purpose of the restriction and an alteration of the general scheme, or, as sometimes said, a change in the neighborhood. \* \* \* Notwithstanding acquiescence in other violations of a building line restriction, an owner of property will not be denied equitable relief to enforce it if the restriction can be shown to be of value to him and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not an entire, change in the neighborhood."

Further, in 26 C.J.S. verbo Deeds § 169, p. 1164 it is said: "The character, as well as the number, of claimed violations must be considered in determining whether the complaining property owners have waived or forfeited the benefit of a restriction. Where an owner has permitted or acquiesced in so many violations of the restriction, or such violation, without objecting thereto that the plan may fairly be said to have been abandoned, he cannot thereafter object to a subsequent violation; waiver has been held not to result unless there have been general and multiple violations without protest. On the other hand, if violations have not been permitted to such an extent as to evidence an abandonment of the plan, a party will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where such violations did not immediately affect the enjoyment of his own premises, or where they were trivial, or minor, in character as compared with those complained of; and the fact that plaintiff has acquiesced in, or has not objected to, a violation committed by defendant does not estop him to prevent an additional or enlarged violation. \* \* \*"

Therefore, the primary question presented herein is: Have the restrictive covenants contained in the 1926 agreement been so disregarded and abandoned as to constitute a subversion of the original scheme of the

Eastridge Subdivision and to result in a substantial, if not an entire, change in the neighborhood?

In the district court, in support of his position, the defendant offered evidence to show alleged infractions throughout the entire subdivision. However, on objection of plaintiff, he was not permitted to prove any which occurred on the east side of Gilbert Avenue, the judge having concluded that even if some existed there they were too remote to have affected the property of plaintiff and consequently the latter's failure to object to them could not be considered in determining the question of waiver. The court, in other words, ruled that such proof was irrelevant and immaterial since it could have no bearing on the outcome of the case.

It was primarily because of this ruling and its approval by the Court of Appeal that we issued the writ herein, our opinion at the time of considering the application having been that the fact of remoteness went to the weight, rather than to the admissibililty, of the evidence; and that, accordingly, it was error to render judgment without taking into account the evidence offered to show violations in the east forty acres. However, in our further study of the cause, we have found considerable and respectable authority supporting the soundness of the mentioned ruling. Thus, it is said in Thompson on Real Property (Permanent Edition), Section 3644 that a lot owner "* * * may take no notice of the violations of the agreement by business carried on remotely from his residence, and enforce it against a business specially offensive to him by its proximity. A covenantee can not be said to have waived his right to enforce a restriction forbidding the erection of a double house by permitting such erection in a different block from that in which he resides, and which erection is over a quarter of a mile distant with a street separating the blocks." See also 43 C.J.S. verbo Injunctions § 87(4)bb, p. 586, Ward v. Prospect Manor Corporation, 188 Wis. 534, 206 N.W. 856, 46 A.L.R. 364, Voorheis v. Powell, 261 Mich. 378, 246 N.W. 154, 85 A.L.R. 932 (with the numerous cases cited and discussed in the A.L.R. annotations), and Edwards et al. v. Wiseman et al., 198 La. 382, 3 So.2d 661.

If then such infractions in the subdivision's eastern portion (more than five hundred feet from plaintiff's home) were too remote to have affected plaintiff in the enjoyment of his property consistent with the covenants, as found by the district court and Court of Appeal, it may be that the evidence respecting them was irrelevant and its exclusion was not improper. As stated in Jones on Evidence, Fourth Edition, Volume I, Section 135: "'* * * The tribunal is created to determine matters which either are in dispute between contending parties or otherwise require proof;

and anything which is neither directly nor indirectly relevant to those matters ought at once to be put aside, as beyond the jurisdiction of the tribunal and as tending to distract its attention and to waste its time. 'Frusta probatur quod probatum non relevat.' The Latin words may be translated: 'It is vain to prove that which if proved would not aid the matter in question.' "

■ But be that as it may the record presently before us discloses that the defendant introduced a scale drawing or plat of the entire subdivision prepared by John R. Bowman, a civil engineer, on which all of the alleged violations (both east and west of Gilbert Avenue) were depicted. Then Bowman sought to testify as to its correctness. However, his testimony was restricted to the forty acre portion lying west of Gilbert Avenue. Nevertheless, the plat is physically in the record and, rather than remand the case which would serve no useful purpose, we shall give consideration to those infractions listed thereon as having occurred in the eastern portion of the subdivision. Such a procedure was followed by this court in Wolf v. Zachary & N. E. R. Company, 128 La. 1092, 55 So. 685, Succession of Warren, 162 La. 649, 110 So. 891 and Ellis v. New Orleans Great Northern Railway Company, 169 La. 797, 126 So. 64, we having thought in each case that a remanding of the matter merely for the technical admission of improperly excluded evidence (of which the court then had cognizance) would be an idle gesture.

Within the entire forty acres lying east of Gilbert Avenue, according to Bowman's plat, there appear to be four or five front setback infractions and a few side line violations (most of which are relatively minor). However, these are widely separated from each other, indicating that the property owners generally did not knowingly permit their occurrence so as to result in abandonment of the subdivision's original plan and scheme of development. Particularly is this true insofar as plaintiff is concerned, for it is shown that he had no knowledge of such occurrences, that none of the violations was closer to his home than five hundred feet, and that intervening between Gilbert Avenue and his property were at least three large residential buildings.

■ Heavily relied on by defendant in support of his abandonment theory is the fact that in such eastern portion certain lots have been resubdivided into numerous smaller parcels. But the restrictive clauses under consideration did not prohibit this action. Additionally, it is to be noticed that originally the lots east of Gilbert Avenue were each from five to ten times larger than those to the west; and that presently the newly created lots are as large or even larger than those on the west side. From all of which it appears that the resubdivid-

ing of some of the east lots was merely a development of them in accordance with the original plan and scheme adopted for creating those in the western portion.

Regarding the evidence that relates to the buildings located on the lots in the western portion of the subdivision we agree fully with the following conclusions of the Court of Appeal [115 So.2d 627]: "The evidence shows some residences were erected which did not exactly comply with the eighty-foot set back condition. Some of these were so negligible they could hardly be said to be perceptible, and obviously could be determined only by an accurate measurement. Such technical violations can in no wise, we think, add to or take from the objects and purposes of the general scheme of development and will, therefore, be disregarded as immaterial to the issue.

"In our opinion only five violations can be said to require serious consideration. These affect Lot 27 and a part of Lot 28, resubdivided and improved by the erection thereon of two houses, each of which is set back seventy feet from Creswell Street [Bowman's map shows seventy-two feet] * * * the houses on Lots 17, 32 and 9 being set back 76, 70, and 75 feet respectively, from the front property line. With reference to the last mentioned three violations there was a conflict in the evidence as to the distance, plaintiff's engineers having measured the set back dis-

tances as 80.46, 71.03, and 73.73 feet respectively. In addition to these violations defendant's engineer measured the set back of plaintiff's home as being 76 feet, whereas the engineer of Guyton measured this distance to be 77.80 feet. [This distance was only at one corner; the opposite corner showed a setback of 85.3 feet.] None of the aforesaid violations exceed 10 feet, whereas defendant's proposed structure would be set back from the street 52.-20 feet. * * *" (Brackets ours.)

In addition to the front setback infractions mentioned above there appear to be four violations in the western portion respecting the thirty-foot side line requirement. But they are relatively minor in nature and certainly cannot be said to be so substantial, even when considered with the other violations shown, as to constitute a waiver of the subdivision's entire general plan or scheme.

True, as defendant notes, there has been a resubdividing of lots on the west side of Gilbert Avenue which was effected almost entirely by changing of the side lot lines. But, as pointed out by the Court of Appeal, "The agreement of June 30, 1926, did not foreclose a division of lots as platted on the map, or the closing or abandonment of streets and the cutting of new streets, or the erection of a home to face a street different from the one indicated on the subdivision map. Such alterations, however, are subject to the condition that each build-

ing so changed is not relieved from compliance with the subdivision building restrictions; * * *."

Moreover, most of the mentioned changes tended to promote, rather than subvert, the purposes for which the covenants were imposed by making larger building lots which permitted even greater setback and side line distances than required. The total result of such changes was that there are now only thirty-one lots in the west forty acres rather than the original thirty-four.

■ In his brief to this court the defendant urges that inasmuch as the plaintiff himself has violated the front setback restriction (there is some doubt in our minds that this has occurred) he cannot now seek to enforce it against another, his counsel in brief quoting from 26 C.J.S. verbo Deeds § 169, as follows: "Where restrictions have been imposed according to a general plan, one of the grantees of lots subject thereto, who has himself violated such restrictions, will not be heard in equity to complain against similar violations by other grantees, although such violations are greater in extent than his own; * * *." However, immediately following that statement are pronouncements, which counsel failed to quote, reading: "* * * but it has been held that, where both parties have been guilty of similar violations of a restriction, one may complain of a further and more extensive violation by the other. Slight, unimportant, or unsubstantial infractions by a grantee will not prevent him from complaining of material and substantial infringements by another. * * *" Furthermore, counsel failed to state that the defendant, himself, was responsible for some of the front and side line deviations on which he relies.

■ After considering all of the infractions pointed out and relied on by the defendant we have concluded that the scheme of development of Eastridge Subdivision, as conceived and established by the subdividers, has in no manner been abandoned or discarded. Accordingly, it is our opinion that plaintiff is entitled to the injunctive relief herein sought, for obviously he would be materially and adversely affected in the enjoyment of his home by an occurrence of the threatened extreme violation of the front setback restriction on defendant's lot—the two properties being in close proximity to and fronting each other.

For the reasons assigned the writ is recalled and the judgment of the Court of Appeal is affirmed.

FOURNET, C. J., concurs.

TURNER, J., recused.

McCALEB, Justice (concurring).

I do not subscribe to this Court's indication of its approval of the trial judge's

ruling, which was affirmed by the Court of Appeal, excluding the evidence of violations of the restrictive covenants occurring on the east side of Gilbert Avenue on the theory that these infractions were too remote to have affected plaintiff in the full enjoyment of his property, being more than 500 feet from his home.

This ruling, so it seems to me, completely overlooks the nature of the defense herein pleaded. In the beginning of the main opinion, the contention of counsel for defendant is stated to be that "* * * *the entire scheme of development* as conceived and established by the subdividers has been abandoned and discarded by those owning land in the Eastridge Subdivision, and that an entirely new and different scheme has emerged in its stead." Under such pleadings, I think it manifest that defendant was entitled to adduce evidence of multiple violations throughout the entire subdivision regardless of whether all of the infractions were within close proximity to plaintiff's property or not. And, while violations of the covenants not within close proximity to plaintiff's property might not, of themselves, have been sufficient to sustain the defense, such violations, when taken in consideration with all other violations not remote to plaintiff's property, were entitled to consideration in order for the Court to determine whether defendant has proven general abandonment of the original plan.

However, since it appears that this Court has given due consideration to the excluded evidence along with the other proof, and finds that defendant has failed to establish the defense pleaded, I respectfully concur in the decree.