345 So.2d 950 (1977)
Earline Canterbury ALLEN, Plaintiff-Appellant,
v.
Olen FORBESS, Defendant-Appellee.
No. 13185.
Court of Appeal of Louisiana, Second Circuit.
March 21, 1977.
Rehearing Denied April 25, 1977.
*951 Wright, James, Hogg & Bleich by E. Joseph Bleich, Ruston, for plaintiff-appellant, Earline C. Allen.
Rabun & Post by David F. Post, Farmerville, for defendant-appellee, Olen Forbess.
James M. Dozier, Jr., Farmerville, for defendant-appellee, Town of Farmerville.
Before HALL, MARVIN and JONES, JJ.
MARVIN, Judge.
A subdivision resident appeals from the rejection of her demands to enjoin Defendant from commercially raising worms on his residence lot in the subdivision, which is subject to conventional restrictions prohibiting commercial establishments.
The restrictive covenant reads, in part:
"All of the lots . . . are hereby restricted to be used as residential property and such residences are to be . . well constructed and suitable for family unit residences . . . Commercial establishments are prohibited . . .
* * * * * *
"The stipulations set out herein shall be covenants running with the land, and may be enforced by any person . . . by a proceeding either at law or in equity. "The restrictions . . . may be altered by a majority of the residence owners living in the subdivision at that time."[1]
Thirteen families (or residence owners) live in the subdivision. The lots of Plaintiff and Defendant are separated by a 30-foot street. This partial reproduction of the subdivision plat and of photographs, depicts the relationship of the properties of the litigants and the appearance of the worm "farm" in controversy:
*952 
*953 Defendant began his worm farm endeavor in 1975. By the time Plaintiff filed suit in 1976, Defendant had erected 35 worm bed structures approximately three feet high, on the rear or easterly portion of his lots. The worm bed structures are of masonry and metal or wood, covered with burlap. Defendant has no customers who come to his lot. He sells for profit and delivers worms to customers who order worms by sometimes telephoning Defendant at his home. Defendant admits that he attempts to raise 1,000 worms per square foot of worm bed and that he has a total of 2,600 square feet of beds in the 35 structures on his subdivision lots.
The subdivision plat and restrictions were recorded in 1953. Plaintiff was residing in the subdivision before Defendant began his worm operation. Plaintiff acknowledged that she knew one person in the subdivision (a Mrs. Long) commercially operated a beauty shop in her home and advertised its operation. Plaintiff was sometimes a customer in this beauty shop, located about 900 yards from Plaintiff's home. Mrs. Long, the shop operator, ceased operating the beauty shop however, some eight years before this litigation arose. Plaintiff also admitted she knew a subdivision resident, about a block away from Plaintiff, was teaching piano lessons in her home.
Plaintiff did not admit being aware that three other persons conducted some type of business in their respective homes in the subdivision. One resident, in his basement hobby shop, has repaired guns and charged therefor since 1966. This resident does not advertise his gun repair services. Another resident calibrates water meters for a charge in the basement of his home. This resident does not advertise this service and his customers do not call at his home. A third resident drew house plans in his home from 1963 until 1969. He advertised his services to a limited degree in the local newspaper and his clients occasionally came to his home.
The restrictions in question are covenants that run with the land for the benefit of the owners of lots in the subdivision. Injunction is a legally proper and available remedy to prevent violation of the restrictions. Civil law principles of interpretation are to be employed in construing restrictive covenants, fairly and faithfully considering the entirety of the instrument and the intent of the subdivider, if interpretation is necessary. Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947); Smith v. DeVincent, 322 So.2d 257 (La.App.2d Cir. 1976).
The language of the covenant clearly restricts the use of a lot to residential purposes and prohibits commercial establishments. While the language perhaps could have been more precise and explicit, a fair, but strict conclusion is that the subdividers intended that a family unit structure would be constructed on each lot and that commercial establishments were not to be permitted. See Beyt v. Woodvale Place Apartments, 297 So.2d 448 (La.App.3d Cir. 1974) for a similarly worded restriction. In Parish of Jefferson v. Groetsch, 256 So.2d 722 (La.App.4th Cir. 1972), the term "Commercial business" in a zoning ordinance was held to include a homeowner's activity of storing, repackaging and selling small items, such as light bulbs, pencils and sandals, which were delivered to customers who ordered from the homeowner.
The lower court found the Defendant's worm farm activity to be in contravention of the restriction, but held the restriction to have been abandoned or waived because of the actual use of a significant portion of the developed area of the subdivision. The "actual use" which the trial court found was the five mentioned violations among the 13 families residing in the developed area of the subdivision.
Whether acquiescence in the violations of a restriction may exist to an extent sufficient to find abandonment and waiver of the restriction, will be determined by the particular circumstances of each case. The violation in question will have to be weighed against and compared with violations of similar character, proximity and notoriety. Also to be considered are the number and the duration of the total violations. *954 Actual or constructive knowledge of the violations on the part of the complaining property owner must be found before waiver and abandonment of a restriction will be declared. Unless the violations result in substantial change in the intended nature of the subdivision, subverting the original scheme of the subdivision, abandonment and waiver will not be declared. Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1960).
In an excellently worded opinion on the issue, our brother Ponder, J., illustrated that in only two of eleven instances have Louisiana courts declared abandonment and waiver.[2] The facts in each case showed violations of the same character by a majority of lot owners in the same category as the complaining lot owner.[3]
Under the circumstances here, the five violations mentioned were indoor activities, not of similar character to Defendant's erection of 35 worm bed structures visible to Plaintiff and the public. Two of the five violations had been discontinued eight or more years when Defendant began his activity and Plaintiff brought suit. While there are only thirteen family units or residences now in the subdivision, the subdivision is comprised of more than twice that many lots which are subject to the restriction. Under the circumstances shown by the record, a finding of waiver and abandonment of the restriction was not warranted.
Defendant also alleges Plaintiff, by acquiescence, laches and silence, should be held legally estopped to enforce the restriction. We do not agree. The record shows that shortly after Defendant began erecting the worm bed structures, Plaintiff discussed the matter with Defendant's wife. A few months later Plaintiff sought legal advice, and the issue was raised by her or her attorney with municipal officials. Defendant was aware that Plaintiff had provoked talk in the subdivision of his worm farm activity. Defendant himself contacted municipal authorities about his worm farm operation before he began selling worms. He was generally aware of the restricted nature of the subdivision when he purchased his property. Defendant knew of Plaintiff's opposition and dissatisfaction with the worm bed structures before he completed all 35 of them. Defendant did not sell any substantial number of worms from the structures complained of until 1976. Plaintiff brought suit in April, 1976, slightly less than a year after Defendant purchased materials for the erection of the first of the worm beds.
Estoppel is not favored at law. Jackson v. Golson, 111 So.2d 876 (La.App.2d Cir. 1959). Even should we assume that Plaintiff did not timely raise objections or protest, ignoring Plaintiff's discussions with her attorney, with Defendant's wife, and with municipal authorities, we find no intent on the part of Plaintiff to mislead or to deceive Defendant into taking a course of action to his detriment. Defendant testified that he did not rely on Plaintiff's silence or inaction to build the farm, and ". . . never thought about whether [his lot] was restricted or unrestricted at that time [the time he began the activity]. . ."
The injunction will issue as prayed for. Accordingly, judgment of the lower court is reversed, and
IT IS ORDERED that Defendant, Olen Forbess, is hereby enjoined and prohibited from engaging in the activity of raising and cultivating worms on a commercial basis and for profit in the Highland Addition Subdivision in the Town of Farmerville.
Defendant is cast for all costs, here and below.
REVERSED AND RENDERED.
NOTES
[1] The lower court considered other issues such as nuisance and the effect of the municipal zoning ordinance. These issues were not raised on appeal by the litigants and arguments here were limited to the subdivision restrictions.
[2] See East Parker Properties, Inc. v. Pelican Realty Company, 335 So.2d 466, 475 (La.App.1st Cir. 1976), at footnote 12.
[3] In Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (1941), violations occurred on 23 of 28 corner lots in the subdivision. In Finn v. Murphy, 72 So.2d 358 (La.App.Orl.1954), violations occurred on nine of sixteen corner lots.