428 So.2d 836 (1983)
Mary J. COOK, et al.
v.
Edith G. Hoover, wife of/and Louis U. HOOVER d/b/a Hoover Child Care Center, Judy B. Songy, wife of/and Edmond Songy, Jr.
No. 82-CA-18.
Court of Appeal of Louisiana, Fifth Circuit.
February 7, 1983.
Rehearing Denied April 18, 1983.
Calvin Lucien Perilloux, LaPlace, for plaintiffs-appellants.
Accardo, Carville, Edrington, LeBlanc & Golden, Richard L. Edrington, LaPlace, for defendants-appellees.
Before BOUTALL, CHEHARDY and GRISBAUM, JJ.
GRISBAUM, Judge.
In this suit to enjoin the operation of a day care center, plaintiff Mary J. Cook, et al appeals the trial court findings in favor of defendant Edith G. Hoover, d/b/a Hoover Child Care Center, Judy B. Songy and Edmond Songy. The issue is whether the restrictive covenant of the subdivision has been abandoned. We reverse.
*837 The appellee Edith Hoover operates a day care center at 425 Bellevue Drive, LaPlace, Louisiana in Riverland Heights Subdivision. She has leased the property from appellees Judy and Edmond Songy solely for use as a day care center for a little over one year. Ms. Hoover lives at 404 Bellevue Drive from where she operated the center for seven years. Ms. Hoover testified at trial her enrollment is presently 87 children although no more than 20 or 30 are picked up or arrive at one time. Three employees work in the center which is operated five days a week from 9:30 a.m. until 12:30 p.m. with five children remaining in the afternoon.
Appellants are neighbors of Ms. Hoover living across, behind or next to the day care center. Appellants filed a petition for an injunction on September 11, 1980 alleging violation of the subdivision's restrictive covenants which provide in pertinent part:
4. (a) No lot in said subdivision shall be used for any purpose other than residential.
(c) It is expressly stipulated that the use of or for public boarding house, lodging house, sanatorium, hospital, asylum or institution of any kindred nature, or anything which may become a nuisance to the neighborhood is hereby expressly excluded from the definition of "residential," as used in paragraph 4...
7. No noxious, illegal or offensive trade or activity shall be carried on upon any lot in said subdivision, nor shall anything be done thereon which may be or become a nuisance to the neighborhood...
Appellants also allege the business is a nuisance because of traffic and noise problems.
Appellees filed an answer on December 23, 1980 admitting the existence of the restrictive covenants but denying their present effectiveness. Trial was held on April 20, 1981 and judgment was rendered on June 30, 1981.
Although appellees concede the existence of the restrictive covenants they contend they have been abandoned due to the acquiescence of property owners in the continued operation of numerous commercial enterprises. La.C.C. art. 782. When a plaintiff has established the violation of a restriction, the burden shifts to the defendant to prove the restriction has been terminated or abandoned. See La.C.C. art. 2232; Fisher v. Smith, 190 So.2d 105 (La.App. 4th Cir.1966); Cabibi v. Jones, 391 So.2d 461 (La.App. 4th Cir.1980).
"In determining whether the restriction has been abandoned by the property owners, it is essential to consider the number and the nature of the violations and their proximity to the objecting residents." Gwatney v. Miller, 371 So.2d 1355 (La.App. 3d Cir.1979). Unless the violations result in a substantial change in the intended nature of the subdivision, subverting the original scheme and object for which the covenant was entered into, abandonment will not be found. Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (La.1960); Allen v. Forbess, 345 So.2d 950 (La.App. 2d Cir. 1977). Nor will abandonment be found resulting from insubstantial, technical or infrequent violations. "...(I)f violations have not been permitted to such an extent as to evidence an abandonment of the plan, a party will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where violations did not immediately affect the enjoyment of his own premises, or where they were trivial, or minor, in character as compared with those complained of; and the fact that plaintiff has acquiesced in, or has not objected to, a violation committed by defendant does not estop him to prevent an additional or enlarged violation." Guyton v. Yancey, supra.
Because it is undisputed the restrictive covenant, if not abandoned, would prevent operation of the center, the burden is on appellees to prove they have been abandoned. Appellees must therefore show there have been a large number of serious violations in close proximity to appellants which substantially change the character of the neighborhood from residential to commercial. They attempt to achieve this result *838 through the testimony of appellants, appellees, others who have conducted babysitting services, introduction into evidence of a local newspaper with phone numbers for local businesses, and testimony regarding a list of occupational licenses issued for the subdivision.
Of the nine appellants who testified at trial, most stated they had been aware of a previous baby-sitting service conducted by a Ms. Barrilleaux but, as she only cared for six to eight children out of her residence, the operation did not disturb them. Some of the appellants had also been aware of Ms. Hoover's previous operation out of her home but stated that it never interfered with the enjoyment of their homes as it did not seem to create as much traffic or have as many children. Appellant Ralph Stewart had not been aware of any other child care or baby-sitting services in the area.
Appellants Mr. Cook and Ms. Christy stated they had purchased items from garage sales in the neighborhood but from no business. Ms. Cook stated that several years ago she made periodic sales of ceramics to neighbors out of her house. Ms. Catoire testified that although her husband used to repair washers and dryers, it was ten years ago. She only received calls in her home as he went to the people's homes to do the repairs. Only occasionally would he bring a machine home to work on in his garage. Ms. Trahan was aware of only one other business operation in the subdivision, that being Jones Day Care Center.
Appellee Ms. Hoover testified regarding a page of classified ads from the local newspaper L'Observateur. Ms. Hoover stated she called many of the numbers given in the ads and was told the numbers corresponded to addresses in Riverland Heights or another subdivision, Carrollwood. However, exact addresses were not given at trial nor was it clear these businesses were operated at those addresses. Also, it was not indicated if these were residences with small businesses conducted inside or if they were purely commercial businesses as Ms. Hoover's. The first ad was for remodeling, repairs and paper hanging, the next for lawn mower and small engine repairs. The next number contacted was in Carrollwood and was for painting and roofing, the next for mobile home moving and another for framing. Another was for piano lessons and another for alterations. A baby-sitting service was advertised in Riverland and a roofing service was advertised in Carrollwood. Rod's Tractor Service was called as was a T.V. repair service. Counsel for defendant conceded the fact that any reference to business in Carrollwood would not be relevant to the issue involved here. Thus there were approximately ten ads with numbers which we are to believe were located in Riverland Heights.
Ms. Hoover also testified as to photographs she took in the neighborhood. One house had a sign outside advertising Della's Beauty Shop. Another was the frame shop advertised and the lawn mower repairs advertised. There was also a picture of a house in which swimming lessons were presumably given. Ms. Hoover stated she has seen a congestion of cars outside some other businesses such as Rod's Service, Tommy's Electric and S & S vans.
Called on behalf of appellee was Joan Anker who stated she operated a child care center at 1408 Ellersly and had two employees at that address. However, the operation was conducted at least six years ago. She had about 30 children in the house used exclusively for that purpose. It was not established the operation was in the same part of the subdivision as the Hoover operation so as to be covered by the same restrictive covenants. Ms. Nell Oberschmidt of 535 Welham Loop stated she cares for about six children in her home. However, her residence is not within the lots covered by the covenants.
Judy Songy, owner with her husband of the property in dispute, stated that she obtained a list from the Sheriff's Office of names, addresses and occupations for all the occupational licenses issued in Riverland Heights. At one point counsel for defendant stated he was showing her a list of 73 names but at another point, when attempting to offer the list into evidence, stated it *839 contained 33 names. However, the list was not introduced into evidence because it was not certified by anyone from the occupational license department to show its validity. Counsel for appellee stated he would withdraw it, have it certified and submit it at a later date as suggested by the court. However, we cannot find such a list in the record before us. We cannot know, therefore, how many licenses have in fact been issued. The nature and character of the businesses, essential to our consideration, is also not known.
Upon reviewing the entire record, it discloses only trivial violations of the residential restriction in the operation of small, unobtrusive home businesses. We are unable to find outward manifestations of nonresidential activities except, perhaps, for cars parked around a van customizing business. We do not find these few violations manifest an intent to abandon the plan of development which the restriction was originally intended to implement. Gwatney v. Miller, supra.
For the reasons assigned, the judgment of the trial court is reversed and injunctive relief is granted.
REVERSED.